**In the Matter of Jay A. FARACA, Debtor.**

**Bankruptcy No. 81–02189.**

United States Bankruptcy Court, D. Idaho.

Feb. 24, 1982.

Wm. H. Mulberry, Pinehurst, Idaho, for debtor.

L. C. Spurgeon, Coeur d'Alene, Idaho, trustee.

Cox & Davis, Coeur d'Alene, Idaho, for objecting creditor, First Sec. Bank.

## MEMORANDUM DECISION

M. S. YOUNG, Bankruptcy Judge.

This matter is before the court upon the objection of First Security Bank of Idaho to the confirmation of debtor's plan for adjustment of his debts under chapter 13 of the Bankruptcy Code. Debtor's plan proposes to pay First Security Bank, hereinafter called bank, the sum of $7,800.00 plus interest as the allowed secured value of its collateral over a 36 month period. The plan also provides for the payments to Avco Financial Services as a secured creditor and proposes to surrender to it certain collateral. Debtor's plan further provides for payment of long term indebtedness on residential property outside the plan. Unsecured creditors are to receive a pro rata share of any balance received by trustee after the secured creditors provided for in the plan are paid. Debtor's payments are $190.00 monthly for six months, thereafter the sum of $250.00 per month for six months, followed by a sum of $335.00 per month for twenty-four months.

The bank objects to confirmation of the plan on several grounds:

"(a) As the debt is a long term obligation as defined by 11 U.S.C. 1322(b)(5), the plan has failed to provide for a cure of the debtor's default and current payments under the debtor's contractual obligation.

(b) The Plan fails to provide for adequate protection of this creditor's secured claim in that (1) no insurance is being maintained on the vehicle as required by the

contract (2) the Plan proposes insufficient payments at value alleged by the debtor, as 11 U.S.C. 6621 provides for 20% interest as of February 1, 1982, and at 20%, payments must be $289.89 per month, (3) the Plan proposes that some of the payments proposed are to be deferred for more than one year; only current payment of amounts required by 11 U.S.C. 1325(a)(B) affords adequate protection, and (4) the Plan is not sufficiently funded. The Plan proposes total payments of $10,680.00 ($190.00 for 6 months, $250.00 for six (6) months and $335.00 for twenty-four (24) months); after subtracting 10% administrative costs, the $9,612.00 remaining is insufficient to pay the proposed term of payment for secured creditors of $9,561.00 ($258.96 × 36 plus $6.64 × 36) and make any payments to unsecured creditors.

(c) The Plan fails to treat all creditors in the same class equally, as required by 11 U.S.C. 1322(a)(3). Specifically, creditors, Dawn L. Mattmiller and Timothy D. and Carrie Wells are creditors, either together or separately, with substantially similar claims as First Security Bank of Idaho, N.A., but the Plan proposes to pay each of these creditors their full monthly payments, and proposes only to pay allowable value to the First Security Bank of Idaho, N.A."

At the hearing on confirmation of the plan, the bank agreed that the value of the vehicle which is collateral for its claim is $7,800.00. It was established that the vehicle is now insured. Thus, these objections are moot.

The bank's primary ground of objection is that because the original contract for the purchase of the vehicle in question was a 48 month contract, on which the last payment would fall after the 3 year term of the plan, this indebtedness is nondischargeable under the terms of Section 1328(a)(1) and that the debtor in such a circumstance cannot modify the bank's security interest under Sections 1322(b)(2) and 1325(a)(5)(B) of the Code. Section 1322(b)(2) says that a debtor may, in his plan, modify the rights of hold-ers of secured claims, and § 1325(a)(5)(B) says that if the plan provides that the holder of an allowed secured claim retains the lien securing such claim and that the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the allowed amount of the claim, the plan must be confirmed. Section 1322(b)(5) states that, notwithstanding Section 1322(b)(2), a plan may ". . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

Section 1322(b) is a list of permissive plan provisions and clearly states that a plan "may" include any or all of the enumerated provisions plus any other appropriate provision not inconsistent with Title 11. Subsection (5) here relied upon by the bank may be useful to a debtor where he has long term indebtedness fully secured by an asset of substantial value and in which the debtor has an equity. In such circumstances, if a debtor cannot pay the allowed secured value of the asset within a 3 year term, he may be able to cure a default within such time, continue regular payments, and thus preserve his equity in the collateral. A debtor may also wish to use 1322(b)(5) in a situation where he proposes a 100% payment plan which will pay his short term debt in 3 years, and his long term debt in full according to its terms. In such a situation, the debtor can cure defaults and continue the long term debt payments without harrassment.

In the absence of a plan providing for payment of long term debt, I find nothing in the Code which prevents discharge in either a chapter 7 or chapter 13 proceeding. If a discharge of such debt under chapter 13 is sought, the only obstacle is found in 1325(a)(4) which requires that the property or money to be distributed through the plan on behalf of unsecured claims must be not less than the amount that would be paid on such claims if the estate were liquidated

under chapter 7. I do not read Section 1328(a)(1) to make 1322(b)(5) mandatory. It merely states that if a debtor elects to pay all or part of his long term debt by use of such a provision in his plan, it will not be discharged at the end of the 36 month period.

With regard to the adequacy of the payments, the bank has made no showing that the asset will depreciate at a rate in excess of the payments it will receive under debtor's plan. The value of the asset is fixed at $7,800.00 and I now fix the amount of the bank's allowed secured claim as this sum plus interest over the term of the plan at the contract rate which in this case is 18% according to the bank's security agreement.

The last objection deals with requirements of Section 1322(a)(3) relating to classification of claims. This section provides that, if the plan classifies claims, it must provide the same treatment for each claim within a particular class. Because secured creditors ordinarily have separate collateral and separate debt obligations due to them from the debtor, each secured creditor is itself a class and must be dealt with individually. The debtor does, in his plan, deal with each secured creditor individually and thus there are several classes of secured creditors. With regard to the bank's unsecured portion of its debt, it is treated in the same manner as other unsecured creditors since all unsecured creditors are treated as one class in the debtor's plan. The bank's unsecured claim will be $1,252.85.

■ The bank also asserts that the plan is not in good faith and relies upon cases holding that some substantial payment must be made to unsecured creditors. As stated above, I am of the opinion that unless the bank can show that it would receive a greater dividend on the unsecured portion of its claim under a chapter 7 liquidation than it will under debtor's plan, the plan is in good faith unless it can be shown that the debtor is using the chapter 13 as a scheme to defraud creditors. See *Lewiston Seaport Plumbing & Heating, Inc. v. Prine*, 10 B.R. 87, 4 C.B.C.2d 51 (Bkrtcy.D.Idaho 1981).

■ I conclude that all of the bank's objections to confirmation should be denied except the one contending that funding provided by debtor is insufficient to fund the plan. At this point, I do not have sufficient information to make a valid finding on this issue. Trustee is asked to submit a statement of what funds will be necessary to fund the plan to meet the requirements of the statute. Copies of this accounting are to be furnished to counsel for the parties. If it appears from trustee's accounting that the plan can be funded so that priority claims, administrative expenses, and the bank's claim can be paid in 36 installments, I will confirm the plan. If it cannot be so funded, I will not confirm it. As stated hereinabove, the bank's allowed secured claim is $7,800.00 together with interest at the rate of 18% per annum over the 3 year period within which the bank's allowed secured claim must be paid.