In the Matter of PRINE, Lorence Allen Prine, Mary Jeanne, husband and wife, Debtors.

LEWISTON SEAPORT PLUMBING & HEATING, INC., Plaintiff,

v.

PRINE, Lorence Allen and Prine, Mary Jeanne, Defendants.

Bankruptcy No. 80–01273.
Adv. No. 80–0421.

United States Bankruptcy Court, D. Idaho.

March 9, 1981.

Marilyn Schwam, Moscow, Idaho, for plaintiff.

Manderson L. Miles, Lewiston, Idaho, for defendants.

MERLIN S. YOUNG, Bankruptcy Judge.

This case presents the much litigated question of when is a Chapter 13 plan proposed in "good faith" as required by Section 1325(a)(3) of the Bankruptcy Code.

Debtor Mary Jeanne Prine before the commencement of this case plead guilty to the crime of embezzlement in State Court and was thereafter placed on probation by an order which requires among many other conditions, that she " * * * shall make restitution to Lewiston Seaport Plumbing and Heating (her ex-employer from whom she embezzled) in whatever amount shall be determined by the Court in the civil matter which is now pending; * * *." The civil liability has never been determined.

On September 3, 1980, Mary Jeanne Prine and her husband Lorence Allen Prine, as debtors, filed for relief under Chapter 7 of the Bankruptcy Code, but on September 24, 1980, converted to a Chapter 13 proceeding. Their plan provides for payments of $100.00 per month to the trustee for thirty-six

months, all payable to general unsecured creditors. Debtors have surrendered their security to one secured creditor and seek to avoid the lien of another under Section 522(f) of the Code. They lease an automobile and have encumbrances on their dwelling to a savings and loan association, and have granted a second encumbrance to their attorneys as security for their fee. These two obligations are to be paid outside of the plan.

Mr. Prine is self-employed in a delivery business from which he has been netting approximately $849.00 per month on an annual basis. His monthly operating reports for October, November, December 1980, and January 1981, however, show his net income to have averaged only $765.00 while the very conservative expense budget of debtors is $751.00 Thus, the $100.00 per month payment is a maximum possible payment at this time. Mrs. Prine is owed $6,160.00 for back child support for her three children, which is claimed as exempt under 11 U.S.C. § 522(d)(10)(D). Whether this sum is collectible or not is not known. Mrs. Prine is not now employed.

Debtors' schedule of assets and liabilities shows that debtors' only assets are a residence in which they have an equity of approximately $6,000.00 after encumbrances, upon which they have claimed a homestead under Idaho law in the amount of $25,000.00, and personal property consisting of household goods which are listed at a value of approximately $3,000.00, all of which is exempt from execution under both Idaho and Federal Law.

Their unsecured debt is $67,142.70 of which $45,000.00 is listed as an uncontested amount owed to Lewiston Seaport Plumbing and Heating, Inc. This creditor has filed an objection to confirmation of the plan in which it alleges as grounds for objection:

"1. Debtor JEANNE PRINE, as a result of pleading guilty to embezzlement, is subject to a district court Order of Probation (a copy of which is attached) which requires her to make restitution to said creditor, her embezzlement victim.

If she fails to make such restitution, she will go to jail.

"2. The Chapter 13 plan should be set up to accomplish this Order of Probation in order to help the debtor deal realistically with her problem and avoid the imposition of a jail term in the future.

"3. Thus, because of the consequences of nonpayment of this debt, the debt should be in a separate category in the plan.

"4. The proposed plan submitted by debtors' attorney, however, is designed to pay almost nothing to said creditor despite the fact that this debt constitutes 80% of the total debt (excepting debtors' house mortgage which is exceeded by the house's market value by a minimum of $20,000.00).

"5. Thus it appears that the only reason for the bankruptcy is to avoid paying restitution to the crime victim.

"6. Debtors are trying to use Chapter 13 to achieve discharge of a debt that is nondischargeable under Chapter 7 without making any reasonable attempt to pay the debt, and thus the plan is not proposed in good faith."

Only objection No. 6 falls directly under the grounds for objection to confirmation specified in Section 1325, although the other grounds also seem to go to good faith.

■ As to the first ground, the debtor Mary Jeanne Prine will have to deal with the State Court on her probation and restitution problem. I see no reason why this affects her Chapter 13 proceeding.

Debtors admit that they seek relief under Chapter 13 to obtain the benefit of its liberal provisions on discharge.

Debtors' plan meets all of the requirements of Section 1325 of the Code with the possible exception of good faith, and trustee recommends confirmation.

To establish that debtors' plan is not in "good faith" the objecting creditor relies on decisions which hold that "good faith" is essentially a subjective matter to be decided by the Court in each case. The cases cited are *In re Schongalla*, 4 B.R. 360, 2 CBC 2d

286 (D.Md., 1980); *In re Seman*, 4 B.R. 568, 2 CBC 2d 394 (S.D.N.Y.1980); both of which deal with zero payment plans to unsecured creditors. In *In re Burrell*, 2 B.R. 650, 1 CBC 2d 474 (Bkrtcy.D.Cal., 1980) Modified on Appeal, 6 B.R. 360, 2 CBC 2d 1019, the Court held a plan was not in good faith if it paid less than 70 percent of general unsecured claims. In *In re Iacovoni*, 2 B.R. 256, 1 CBC 2d 331 (D.Utah, 1980), and *In re Campbell*, 3 B.R. 57, 1 CBC 2d 653 (Bkrtcy. S.D.Cal.1980), it was held that if payments were not "substantial" the plan was not in good faith. In *In re Bloom*, 3 B.R. 467, 1 CBC 2d 1098 (Bkrtcy.D.C.Cal.) the Court held that if the motive for using Chapter 13 is to obtain a discharge, which could not be obtained in Chapter 7, the plan is illusionary and not in good faith.

■ All of these decisions, and there are many similar, are based on an interpretation of what the particular court conceives to have been the intent of Congress in enacting Chapter 13. I, however, think the intent of Congress must be drawn from what the statute says, unless it is ambiguous.

Chapter 13 is not ambiguous in any respect. It says that if a debtor owes less than $100,000.00 in unsecured debt, and less than $350,000.00 in secured debt; can show that he has a regular source of income, and is willing to pay his general creditors more than they would receive by liquidation of his non-exempt assets under Chapter 7 of the Code, he may have the benefits granted by Chapter 13. The benefits granted are clearly stated. Most of them are not available to a debtor under Chapter 7. Among these are the right to cure defaults on installment obligations, the right to modify rights of secured creditors by paying them the value of their secured claim over an extended period, the right to stay action against a co-debtor; to pay tax obligations in installments, and to obtain a discharge of all debts provided for in the plan upon completion of the plan, except 523(a)(5) debts for alimony, support or maintenance of a spouse or child and 1322(b)(5) extensions.

■ Some courts have held that a debtor should not be entitled to the benefits of Chapter 13 unless that debtor's plan provides some payment to his general creditors in excess of the minimum payment required by the Code. Congress clearly said in Section 1325(a)(4) that the only requirement as to the amount to be paid under the plan is that all allowable unsecured claims will receive more than they would receive in liquidation under Chapter 7. To interpret the good faith clauses to say that some other payment is required seems to me to be unauthorized judicial legislation. Thus I conclude that "good faith" cannot turn on the amount being paid by a debtor.

■ Aside from minimum payment plans, the fact that a debtor can obtain a discharge under Chapter 13, when he could not do so under Chapter 7, offends many courts. The case at bar is an example, and many would say it is a clear case of bad faith. I, however, have difficulty in finding bad faith when a citizen avails himself of a legal remedy provided by law. Presumptively, Congress intended what it said. If it erred, it is Congress' duty to correct the error. Certainly the discharge problem and the minimum payment plans have been brought to the attention of Congress. Whether they should be allowed or not is a question of public policy best left in the hands of the legislative body.

If it is bad faith to utilize the discharge right, is it bad faith for a debtor to file a Chapter 13 plan for the sole purpose of extending his tax liability, or to file for the sole purpose of using the cram down provisions on a secured creditor. All these, seem to me, to be legal remedies granted by Congress which the Courts should not deny by judicial fiat. In *In re Seely*, 6 B.R. 309 (Bkrtcy.E.D.Va.1980) the judge said it well:

"So long as the petition is filed with the intent to utilize the Act to attain relief in a legitimate fashion, good faith will exist. It is lacking when a debtor attempts to manipulate the statutory scheme for his own benefit at the expense of his creditors under the guise of a reorganization proceeding."

In that case the Court held a debt resulting from criminal assault and battery dischargeable. In the case at bar there are no facts indicating any plan to defraud creditors on the part of debtors. See also *In re Keckler*, 3 B.R. 155, 1 CBC 2d 574 (Bkrtcy. N.D.Ohio, 1980), holding that the Bankruptcy Court has no discretion if the elements of confirmation are met. The following cases also support my position. *In re McBride*, 4 B.R. 389, 2 CBC 2d 302 (M.D.Ala.1980); *Matter of Koerperich*, 5 B.R. 752, 2 CBC 2d 1284 (Bkrtcy.D.Neb.1980); *In re Cloutier*, 3 B.R. 584, 1 CBC 2d 909 (Bkrtcy.D.Colo. 1980); *In re Thebeau*, 3 B.R. 537, 1 CBC 2d 940 (Bkrtcy.W.D.Ark.1980); *In re Terry*, 3 B.R. 63, 1 CBC 2d 525 (Bkrtcy.W.D.Ark. 1980).

For the foregoing reasons the plan will be confirmed.

IT IS SO ORDERED.