In re David J. GATHRIGHT, Debtor.

Bankruptcy No. 86–02118K.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 24, 1986.

As Amended Nov. 26, 1986.

· Mitchell W. Miller, Philadelphia, Pa., for debtor.

K. Kevin Murphy, PHEAA, Harrisburg, Pa., for PHEAA.

James J. O'Connell, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant case presents the recurrent issue of whether a Chapter 13 Plan by which the Debtor seeks principally to discharge obligations otherwise nondischargeable under 11 U.S.C. § 523(a) in a Chapter 7 case "has been proposed in good faith," as required by 11 U.S.C. § 1325(a)(3). We believe that the fact that the Debtor proposes to discharge a debt nondischargeable in a Chapter 7 case, specifically a student loan obligation otherwise nondischargeable per 11 U.S.C. § 523(a)(8), is irrelevant to resolution of the issue of whether the Debtor has proceeded "in good faith," since the relief sought is within the scope of the lawful goals of a Chapter 13 case. We therefore are compelled to dismiss the Objections to confirmation pursuant to 11 U.S.C. § 1325(a)(3). However, we believe that a hearing, at which the Debtor is in attendance, is necessary to resolve several of the questions of alleged non-compliance with 11 U.S.C. § 1325(b) raised in the Objections to confirmation filed in this matter.

The instant bankruptcy petition and Plan were filed by the Debtor on April 29, 1986. His Schedules included no priority or secured claims, and but seven (7) unsecured claims totalling $9,205.00. Except for a $660.00 obligation owed to Sears, Roebuck and Company, it appears that all of the debts listed are educational loans. Most prominent among these is a debt owed to the objecting party, the Pennsylvania Higher Education Assistance Agency (PHEAA), in the amount of $8,200.00. It is therefore safe to say that the Debtor's filing of his Chapter 13 case was motivated almost exclusively by a desire to discharge student loan obligations which may have been nondischargeable in a Chapter 7 case.

The Debtor also attached a Statement of current income and expenses to his papers which disclosed take-home pay of $1,111.00 monthly by the Debtor, $606.00 monthly take-home pay by his wife, and $65.00 monthly "disability," for a total of $1,782.00 monthly.

The Debtor's expense sheet stated that he is obligated to pay $150.00 monthly support for two (2) children aged sixteen (16) years and thirteen (13) years, presumably

not living with him, and that his present dependents included his wife and three (3) children aged twelve (12) years, seven (7) years, and four (4) years. The expenditures listed for shelter, food, and other necessities by this Debtor, faced with substantial dependents to support, appear, if anything, overly modest. PHEAA nevertheless took issue with the following specific monthly expenses: (1) $133.00 for "auto insurance," on the ground that this is "excessive" and that the Debtor's Schedules do not indicate that he owns a motor vehicle;[1] (2) $135.00 for "medical expenses;" and (3) $105.00 for "recreation."[2]

The sum of the Debtor's listed monthly expenditures is $1,676.00. His Plan, leaving a $6.00 monthly "excess," proposes payment of $100.00 monthly for thirty-six (36) months, which the Court notes constitutes a dividend of approximately forty (40%) percent to unsecured creditors, including PHEAA.

On September 11, 1986, PHEAA filed Objections to the Confirmation of the Debtor's Plan pursuant to 11 U.S.C. §§ 1325(a)(3) and 1325(b)(1)(B). At the Confirmation Hearing on September 25, 1986, Counsel for PHEAA appeared and argued that the Debtor's attempt to discharge his student loans in his Chapter 13 Plan, as PHEAA's written Objection states, "represents an abuse of the purpose, spirit and intent of the Code as intended by Congress." On September 26, 1986, the Court Ordered Counsel for PHEAA and the Debtor to file Briefs on the issue of whether the Plan should be confirmed on or before October 15, 1986, and November 4, 1986, respectively.

PHEAA responded with a timely and lengthy Brief. After citing a goodly number of the Court of Appeals decisions which address the issue of determining what constitutes "good faith," per 11 U.S.C. § 1325(a)(3), PHEAA tempered its position expressed at the Confirmation Hearing and contended that, while the fact that the Debtor sought principally to discharge student loan obligations in this Chapter 13 Plan did not constitute "bad faith" per se, the nature of the debts in issue was one of the principal factors which this Court should consider in determining whether the requirements of 11 U.S.C. § 1325(a)(3) were met.

The Debtor, in response, filed a two-and-a-half page "Memorandum Brief" on October 29, 1986, in which he argued simply, based on three (3) bankruptcy court opinions, that the amendments to the Code effected by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (BAFJA), eliminated any notion that the nature of the Debtor's obligations was relevant to resolution of the issue of "good faith," per 11 U.S.C. § 1325(a)(3).

Considerable independent research, made necessary by the sparseness of the Debtor's Brief, reveals that the Debtor's position is correct. However, in all fairness to PHEAA, it must be observed that Courts of Appeals in several other Circuits, which this Court is unable to join, have held to the contrary, which renders the Debtor's rather casual treatment of this difficult and important issue somewhat disturbing.

Our starting point in our reasoning process is the language of 11 U.S.C. § 1325(a)(3) itself, which is simply as follows:

the family car is exclusively in the name of the Debtor's wife. However, our speculation does not resolve this issue, and hence the Court believes that a hearing is necessary.

---

**1.** The Court notes that, far from being excessive, a $2,000.00 annual auto insurance premium is quite reasonable for an individual residing at the inner-city Philadelphia address of the Debtor, which is approximately seven (7) blocks from the present residence of the Court, whose own annual insurance premium exceeds this amount. PHEAA's Counsel, being from Harrisburg, can be excused for this misunderstanding on his part. We can certainly conceive of a reason why no motor vehicle is listed; probably

**2.** Actually, in the Objections per se, as opposed to its Brief, PHEAA excepted only to the "recreation" expenditure. We shall, however, consider all of the issues raised by PHEAA in its Brief as Amendments to its Objections.

Except as provided in subsection (b),[3] the Court shall confirm a plan if— ...

(3) the plan has been proposed in good faith and not by any means forbidden by law; ...

After completing its research, the Court must comment at the outset that perhaps no provision of the Code has been so widely construed as has been this section and, particularly, its predecessor version, which was even more simply stated, as follows:

(a) The court shall confirm a plan if— ...

(3) the plan has been proposed in good faith and not by any means forbidden by law.

■ Unfortunately, this section has been utilized as a handle by courts who have been unwilling to grasp the element of the complete nature of the Chapter 13 "fresh start" as a means of moralizing upon the circumstances which have brought certain debtors to file bankruptcy. We think it appropriate to state at the outset that such moralizing has little place in a bankruptcy court and no place in a determination as to whether a Chapter 13 plan may be confirmed. In this regard, many courts speak, we think out of turn, as if a debtor's filing of a bankruptcy to prevent his subjection to the consequences of debts was against the principles of bankruptcy. *See, e.g., Matter of Wall*, 52 B.R. 613, 616 (Bankr.M.D.Fla. 1985) (court faults debtors because "[t]heir Petition appears to be merely a vehicle to defeat the claims of a judgment creditor"); *In re Brock*, 47 B.R. 167, 169 (Bankr.S.D. Cal.1985) (confirmation denied because "the fact remains that the Plan itself is an effort to discharge a debt [for embezzle-

ment], which was nondischargeable in Chapter 7, by paying only a small part of the obligation"); and *In re Johnson*, 36 B.R. 67, 69 (Bankr.S.D.Ill.1984) (debtor found not to have treated creditors "fairly" because she sought to discharge "educational loans that would be non-dischargeable in a straight bankruptcy"). To the contrary, this Court observes that avoiding the consequences of debts, which are usually "just" debts and occasionally acquired in circumstances in which the debtor is morally culpable, is normally the reason for a bankruptcy filing. Many non-bankruptcy courts and, surprisingly, the above bankruptcy courts, appear to have minimized this rather basic principle in the heat of outrage against a particular debtor candidly engaged in a Chapter 13 case to effect a complete "fresh start" by means of a Plan to pay in part even a debt which is nondischargeable in a Chapter 7 case. We observe further that "nondischargeable" does not equate with "collectible" and that often the creditor is practically better off with a partial payment under a Chapter 13 plan than he would be if the Chapter 13 case had not been filed.

Clearly, however, Congress meant *something* by the "good faith" requirement of 11 U.S.C. § 1325(a)(3) if it did not mean to cause courts to make a moral judgment on Chapter 13 debtors. With Collier, we believe that "[t]he phrase 'good faith' as it appears in section 1325(a)(3) is entitled to its historical meaning" in the predecessor Bankruptcy Act, i.e., as relating solely to "debtor misconduct [in the bankruptcy proceeding], such as fraudulent misrepresentations or serious nondisclosures of material

**3.** 11 U.S.C. § 1325(b), which is significant to the ultimate Order in this case, reads as follows:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date

that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) if the debtor is engaged in business, for the continuation, preservation, and operation of such business.

facts." 5 COLLIER ON BANKRUPTCY, § 1325.04, at 1325–12, 1325–10 (15th ed. 1986). We conclude that nothing more should be read into the meaning of this Code provision.

To obtain a generalized definition of "good faith," we first turn to BLACK'S LAW DICTIONARY, which states that, while the concept is "intangible and abstract," it relates principally to

> an honest belief, the absence of malice and the absence of design or fraud or to seek an unconscionable advantage, and an individual's persona; good faith is [sic] concept of his own mind and inner spirit. ... *Id.* at 63 (5th ed. 1979).

Our local Court of Appeals, construing the term "good faith" in the context of the Bankruptcy Act, stated that

> Good faith imports an honest intention on the part of the petitioner, ... whether it was reasonable to expect that a plan could be effected; that there was opportunity and need for reorganization; and that the petition was filed with the honest intention of effecting it.... *In re Business Finance Corp.*, 451 F.2d 829, 834 (3d Cir.1971) (*quoting In re Julius Roehrs Co.*, 115 F.2d 723, 724 (3d Cir. 1940)).

*See also, e.g., Snyder v. Fenner*, 101 F.2d 736, 738 (3d Cir.1939).

A historical analysis causes Judge Norton, in one of the earliest Code cases construing 11 U.S.C. § 1325(a)(3), *In re Wiggles*, 7 B.R. 373, 380 (Bankr.N.D.Ga.1980), to conclude as follows:

> Two elements seem inherent in "good faith" with respect to the debtor's responsibilities in proposing a plan, to wit: (1) honesty in purpose, and (2) full disclosure of relevant facts....
>
> .     .     .     .     .
>
> Thus, good faith as used in Section 1325(a)(3) means full and complete disclosure and honesty of purpose by the debtor to consummate the payments proposed in the plan.

Similarly, the District of Columbia Court of Appeals concludes, in *Barnes v. Whe-lan*, 689 F.2d 193, 198 (D.C.Cir.1982), that "good faith" under the Code, as under the Act, refers to "debtor misconduct in the implementation or approval of the plan, and did *not* relate to the contents of the plan." *See also, In re Street*, 55 B.R. 763, 765 (9th Cir.Bankr.App.1985); *In re Slade*, 15 B.R. 910, 912 (9th Cir.Bankr.App.1981); and *In re Prine*, 10 B.R. 87, 89–90 (Bankr.D.Idaho 1981). We particularly agree with the following observations of the Court in *Prine:*

> If it is bad faith to utilize the discharge right, is it bad faith for a debtor to file a Chapter 13 plan for the sole purpose of extending his tax liability, or to file for the sole purpose of using the cram down provision on a secured creditor. All of these, seem to me, to be legal remedies granted by Congress which the Courts should not deny by judicial fiat.

Despite the clarity of these sentiments, many courts initially interpreted 11 U.S.C. § 1325(a)(3) as a means of denying confirmation to debtors who proposed little or no payments to unsecured creditors, irrespective of their financial incapacity to do better. Prior to the 1984 BAFJA amendments, which addressed the concern expressed by the courts who denied confirmation of plans on this basis in 11 U.S.C. § 1325(b), practically every Circuit Court of Appeals addressed the issue, as is indicated below, and each determined that the quantity of payments to unsecured creditors could not, standing alone, constitute such a lack of "good faith" as to permit denial of confirmation of a plan, per 11 U.S.C. § 1325(a)(3), on this basis. Unfortunately, in so holding, many of these courts developed a lengthy "laundry-list" of "factors" which bankruptcy courts were directed to consider in determining whether "good faith" was present, many of which included consideration of the amount of payments and the types of debts of the particular debtor. Even more unfortunate is the tendency of some courts to carry along the excess baggage of such "good faith factors" in the consideration process even after BAFJA has specifically provided that

the courts should look elsewhere in the Code to evaluate most of these factors.

In this Circuit, the only Code decision in the "good faith" arena is *In re Hines,* 723 F.2d 333 (3d Cir.1983), where the Court thankfully resisted the "laundry-list" approach and simply stated that "Chapter 13 plans providing for nominal repayments to unsecured creditors do not, for that reason, violate the good faith standard of 11 U.S.C. § 1325(a)(3)," *id.* at 334, and held that the standing trustee's report recommending confirmation met the Debtor's burden. A similarly brief and appropriate approach was taken by the Courts in *Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir.1983); *In re Johnson,* 708 F.2d 865, 868 (2nd Cir.1983); *Barnes v. Whelan, supra;* and *In re Goeb,* 675 F.2d 1386 (9th Cir. 1982). *Cf. In re Hammett,* 28 B.R. 1012, 1018 (E.D.Pa.1983) ("bad faith" for purposes of attorney's fee award held to lie only when "a party has proceeded, not with the intent to achieve a favorable determination, but only to delay and harass his opponent").

At the opposite end of the spectrum of pre-BAFJA decisions is *In re Estus,* 695 F.2d 311, 317 (8th Cir.1982), in which the court produced the following eleven-item laundry-list of factors which should be considered in a § 1325(a)(3) determination:

(1) the amount of the proposed payments, and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

Unfortunately, several other Courts of Appeals adopted the *Estus* laundry-list *in toto. See Flygare v. Boulden,* 709 F.2d 1344, 1347–48 (10th Cir.1983); and *In re Kitchens,* 702 F.2d 885, 888–89 (11th Cir. 1983). Other courts developed their own shortened-version laundry-lists. *See Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir. 1982); and *In re Rimgale,* 669 F.2d 426, 432–33 (7th Cir.1982).

One reason that we believe that this approach was unfortunate was that it caused the courts to address elements which are properly dealt with under separate provisions of the Code and should not be brought into the consideration of whether the § 1325(a)(3) "good faith" requirement is satisfied. This observation was especially appropriate after the "low payment" issue was addressed in the BAFJA Amendments' addition of 11 U.S.C. § 1325(b), which provides that, if the trustee or an unsecured creditor objects to the plan, presumably for any reason at all, this triggers a requirement that "all of the debtor's projected disposable income is to be received in the three-year period" after the first Plan payment must be applied to plan payments.[4] Similarly, the addition of 11 U.S.C. § 109(f) in the BAFJA Amendments addresses the "repetitive filing" issue. Congress also, at least in certain circumstances, has passed specific legislation declaring certain types of obligations non-dischargeable in any bankruptcy proceeding. *See* 11 U.S.C. § 1328(a)(1), (2); 42 U.S.C.

---

**4.** This section is quoted in full at page 387 n. 3  *supra.*

§ 294f(g) (loans under the Health Education Assistance Loan Act (HEAL)).[5]

Thus, it is submitted that factors (1), (2), (3), (5), (6), (7), (8), (9), (11) and probably (10) of the *Estus* laundry list should have no place whatsoever in a § 1325(a)(3) analysis. Items (1), (2), (3) and (8) are dealt with in 11 U.S.C. § 1325(b). Item (5) is addressed by 11 U.S.C. § 1322(a)(3). Item (6) is addressed by 11 U.S.C. § 1322(b) to the extent it is relevant. Item (9) is addressed by 11 U.S.C. § 109(f). If the "motivation and sincerity" of the Debtor referred to in Item (10) is based upon most of these elements, we cannot agree that it is relevant. Regarding Items (7), we believe that 11 U.S.C. § 1328(a) and any other specific legislation, like that involving HEAL loans, covers the field. Finally, we can perceive no reason why Item (11) should be at all relevant in determining whether a Plan meets the requirements of Chapter 13.

Similar comments can be made about the *Deans* laundry list.[6] The first, second, third and fourth factors are presently covered by 11 U.S.C. § 1325(b). The sixth factor is covered by 11 U.S.C. § 109(f). The fifth and eighth factors are irrelevant. We must also disagree with the *Rimgale* court's conclusion that " 'a fundamental fairness in dealing with one's creditors' " (*quoting In re Beaver*, 2 B.R. 337, 340 (Bankr.S.D.Cal.1980)),[7] is a permissible consideration. Creditors who lose out in a bankruptcy are all, to some extent, victims of some measure of "unfairness," and the Code only requires that victims of the same class be treated alike.

We also disagree totally with the statements in *Memphis Bank and Trust Co. v. Whitman*, 692 F.2d 427, 432 (6th Cir.1982), that the debtor's dishonesty in acquiring his debts, as opposed to his dishonesty in proposing his plan to liquidate those debts, is a proper consideration in determining the Chapter 13 debtor's "good faith."

We share the belief, with the courts in *In re Greer*, 60 B.R. 547, 554 (Bankr.C.D.Cal. 1986); *In re Red*, 60 B.R. 113, 115–16 (Bankr.E.D.Tenn.1986); and with 5 COLLIER, *supra*, ¶ 1325.04[3], at 1325–17, that the BAFJA amendments restrict the element of "good faith" to the traditional concept of "serious debtor misconduct or abuse." An unfortunate by-product of the laundry-list approach is that it permits courts to reach results consistent with *Whitman*, as in *Neufeld v. Freeman*, 794 F.2d 149, 150, 153 (4th Cir.1986) (following *Deans, supra*, court persists in considering prior filings and honesty of debtor in acquiring debts in 1325(a)(3) analysis despite enactment of BAFJA); and *In re Todd*, 65 B.R. 249, 252–56 (Bankr.N.D.Ill.1986) (following *Rimgale, supra*, and *Estus, supra*, the Court considers "duration of the plan," holding more than three (3) year plan may be necessary; and that the extent of preferential treatment among classes of creditors and whether the debt would be dischargeable in a Chapter 7 case are relevant considerations).

PHEAA, in its Brief, contends that the Court has adopted the "substantial repayment approach" in such student loan cases

**5.** *See In re Gronski*, 65 B.R. 932 (Bankr.E.D.Pa. 1986), where we held that HEAL loans were an exception from a general Chapter 13 discharge. Thus, dischargeability of this type of educational loan is extremely limited, even for debtors filing under Chapter 13.

**6.** The *Deans* court cites the following factors, 692 F.2d at 672, which include the numbers adopted by this Court in the following discussion:

[1] Failure to provide substantial repayment. . . .
[2] the debtor's financial situation,
[3] the period of time payment will be made,

[4] the debtor's employment history and prospects,
[5] the nature and amount of unsecured claims,
[6] the debtor's past bankruptcy filings,
[7] the debtor's honesty in representing facts,
[8] any unusual exceptional problems facing the particular debtor.

**7.** *Beaver* appears to have been effectively overruled in any event by the Ninth Circuit's decision in *Goeb, supra*, and is inconsistent with the Circuit's Bankruptcy Appeal Panel decisions in *Street, supra*, and *Slade, supra*.

as *In re Miller,* 24 B.R. 786 (Bankr.E.D.Pa. 1982) (per GOLDHABER, CH. J.); *In re Goth,* 24 B.R. 122 (Bankr.E.D.Pa.1982) (per KING, J.); *In re Adger,* 23 B.R. 741 (Bankr.E.D.Pa.1982) (per KING, J.); and *In re Mitruka,* 19 B.R. 516 (Bankr.E.D.Pa. 1982) (per GOLDHABER, CH. J.). To the extent that this observation is accurate, it should be noted that these decisions were all rendered in 1982 and that this approach was specifically rejected by the subsequent Court of Appeals decision in *Hines,* which we obviously are bound to follow. Further, these decisions pre-dated the BAFJA amendments, and the elements which this Court deemed relevant would, at present, be mooted by (in the factual pattern of *Mitruka*), or be within the scope of, 11 U.S.C. § 1325(b).

We would also make two (2) other points which militate strongly against PHEAA's argument that the fact that the Debtor is seeking to discharge student loans in his bankruptcy should result in finding that his Plan lacked the requisite "good faith" under § 1325(a)(3). First is that many other court decisions, both before and after the enactment of the BAFJA Amendments, have confirmed Chapter 13 plans admittedly conceived principally to discharge student loan debts which would have been nondischargeable in a Chapter 7 case. *See, e.g., Matter of Bear,* 789 F.2d 577 (7th Cir.1986); *In re Rushton,* 58 B.R. 36 (Bankr.M.D.Ala.1986); *In re McAloon,* 44 B.R. 831 (Bankr.E.D.Va.1984); and *In re Powell,* 29 B.R. 346 (Bankr.D.Colo.1983). Secondly, invocation of Bankruptcy Code provisions other than § 1325(a)(3) to attack Chapter 13 Plans contemplating modest payments on student loan debts have been unsuccessful. *See, e.g., In re Klein,* 57 B.R. 818 (9th Cir.Bankr.App.1985) (challenge based upon 11 U.S.C. § 1325(a)(4) rejected); and *In re Ali,* 63 B.R. 591 (Bankr.E.D.Wis.1986) (challenge based upon 11 U.S.C. § 1322(b)(5) rejected).

■ Therefore, we conclude that the fact that the Debtor here seeks to discharge

almost exclusively student loan obligations by means of his Chapter 13 bankruptcy does not render the Plan, for that reason, subject to attack under 11 U.S.C. § 1325(a)(3).

■ PHEAA has, however, also challenged the Debtor's Plan on the ground that it fails to meet the 11 U.S.C. § 1325(b)(1)(B) criterion of providing "that all of the debtor's projected disposable income is to be received in the three-year period" of the plan is paid into the Plan. In this regard, PHEAA points to what it contends are excessive auto insurance, medical, and recreation expenses of the Debtor. We do not believe that, because the Debtor seeks to discharge student loan indebtedness, the criterion of 11 U.S.C. § 1325(b)(1)(B) must or should be applied more stringently than in any other Chapter 13 case. We also reject the suggestion of PHEAA that the Debtor should be compelled to make payments for five (5) years instead of three (3) years; § 1325(b)(1)(B) contemplates a required three-year payment period, and we do not believe that the nature of the indebtedness can possibly be said to constitute cause, per 11 U.S.C. § 1322(c), to extend the plan to five (5) years.

■ However, we do believe that, considering this Plan as we would any other where § 1325(b)(1)(B) objections are raised, we should schedule a hearing which the Debtor must attend and explain the expenses challenged by PHEAA. Frankly, we believe that, in any case where these or similar objections to confirmation are raised, debtors should attend to provide immediate explanation of the entries and their budget to the court, in order that we can rule promptly on the request for Plan confirmation. We greatly disfavor the practice of having attorneys "testify" for their clients on such matters, and we therefore give little weight to such explanations.[8]

---

8. We do not address the subject of who has the "burden of proof" at a confirmation hearing.

Bankruptcy Rule 3020(b)(2), the only known source addressing the point, seems to say only

Nevertheless, we recognize that, here, the possibility does exist that, enlightened by this Opinion, Counsel for PHEAA, whose cooperation with opposing counsel has always been exceptional, will not wish to pursue § 1325(b) objections further, or that his reservations can be satisfied by representations by the Debtor's Counsel, whose reputation for candor is exceptional. We shall therefore fashion an Order in conformity with this Opinion which takes these considerations into account.

---

that the § 1325(a)(3) requirement is deemed satisfied if no objection is raised. In the absence of guidance, we believe that the Debtor has the burden of proving that he meets the requirements of § 1325(a), and any objecting party has the burden of proving that the Debtor's plan fails to meet the requirements of § 1325(b).