In re Jeffery A. HILL, Tobie L.
Hill, Debtors.

Bankruptcy No. 2–88–03137.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Feb. 15, 1989.

Joseph F. Castner, Johnstown, Ohio, for debtors.

Fred J. McMillen, Jr., Westerville, Ohio, for Judi's, Inc.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER ON OBJECTION TO CONFIRMATION AND MOTION FOR VALUATION

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This contested matter presents a dispute over the valuation of a 52–acre tract of real estate and the improvements thereon. The dispute arises in the context of an objection to debtors' proposed Chapter 13 plan ("Plan") and the related motion for valua-

tion which have been asserted by Judi's, Inc. ("Judi's"). The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. The matter at bar is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(1), and (2)(B) and (L). The following opinion and order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

Debtors' Plan provides for payments of $450 per month over a 36–month time period; payment of $1,500 (debtors' anticipated yearly federal income tax refund) on or before April 1 of each calendar year; payment in full to holders of allowed secured and priority unsecured claims; and, a dividend of 13% to holders of allowed general unsecured claims. Judi's has filed a claim in the amount of $52,046.40 which it asserts is fully secured ("Claim"). The Plan treats the Claim as secured in the amount of $12,960 and unsecured as to the remaining balance of $39,086.40. Hence, debtors propose to pay Judi's $12,960 over the 36–month duration of the plan with interest at a rate of 10% per annum and a 13% dividend on its $39,086.40 unsecured claim. This proposed treatment under the Plan has spawned Judi's objection to confirmation ("Objection") and motion for valuation ("Motion").

## II. *Factual Background*

Judi's Claim arises from a series of prepetition transactions with the debtors, Jeffery and Tobie Hill ("Debtors"). In 1984, Debtors purchased a 15–acre tract of land and the house and two barns thereon ("Residential Tract") from Judi's. The property was purchased pursuant to a land contract for a purchase price of $50,000. Under the contract, Debtors were granted the option to purchase from Judi's an adjoining tract of real estate, consisting of 37–acres ("Farm Property"), at a price of $1,000 per acre. On April 16, 1986, Debtors entered into a second transaction with Judi's whereby Debtors acquired title to both the Residential Tract and the Farm Property (collectively the "Property").

Debtors paid $33,300 in cash to Judi's which sum represented the proceeds of a $33,300 loan obtained from First Federated Mortgage Corporation ("FFMC"). To secure repayment of the loan received from FFMC, Debtors granted FFMC a first mortgage on the Residential Tract. The remaining $41,700 of the total purchase price of $75,000 was financed by Judi's, which received a second mortgage on the Residential Tract and a first mortgage on the Farm Property.

Debtors' treatment of the Claim as a $12,960 secured claim and a $39,086.40 unsecured claim is based upon their assertion that the value of the Property is $38,000. To support this valuation, Debtors offered the testimony of Ronald Rhodeback ("Rhodeback") and introduced Rhodeback's appraisal letter as an exhibit. Rhodeback, a licensed real estate salesman and auctioneer who is associated with Duck's Mill Real Estate and Auction Company, resides in Granville, Ohio, and is a neighbor of the Debtors. He obtained his license as a real estate salesman in 1976 and has been a licensed autioneer since 1970. According to Rhodeback, the Property has a fair market value of $38,000. Rhodeback's appraisal assigns separate valuation amounts for the Residential Tract—$23,600—and the Farm Property—$14,400. Rhodeback described the house situated on the Residential Tract as being in a state of disrepair, noting that the interior of the house is in dire need of renovation. The exterior of the house, Rhodeback testified, is also in a dilapidated condition: the soffits of the house are rotting and there is at least one hole in the south wall of the home. Rhodeback opined that the soil on the Farm Property, which is a clay soil as opposed to a loam-type soil, was not conducive to the production of a good crop. Rhodeback has never seen a good crop grown on the Farm Property in the years he has lived adjacent thereto. He compared the Farm Property to four similar properties in the general vicinity which were recently sold. Based upon his examination of these comparable sales, he values the Farm Property at $450 per acre.

Rhodeback's appraisal training is limited, however, to the completion of two appraisal courses: an appraisal course with the auctioneer's association he is a member of and a more recent (June, 1988) appraisal course with the Appraisal Institute in Nashville, Tennessee. Rhodeback's principal occupation is that of an auctioneer as opposed to an appraiser.

Judi's presented the testimony of Hale Whipkey in support of its Motion and Objection. Whipkey is a licensed real estate appraiser and broker doing business in Westerville, Ohio. Whipkey has been a licensed appraiser for approximately 12 years and in that capacity has performed appraisals of agricultural, residential, commercial and light industrial properties. Whipkey was formerly employed by the State of Ohio, Department of Tax Equalization, for a two-year period. He conducted numerous appraisals for that state agency. Whipkey has taken a series of courses since 1976 from the American Institute of Real Estate Appraisals and is a candidate for designation as a Member of the Appraisal Institute (M.A.I.). Whipkey's written appraisal of the Property fixes the Property's value at $66,000. According to Whipkey, the 32–acre Farm Property has a fair market value of $29,000 and the Residential Tract's fair market value is $37,000.

The amount of Judi's allowed secured claim, Debtors contend, should be fixed at $12,960. This sum represents Rhodeback's opinion as to the value of the Farm Property ($14,400)—the property upon which Judi's holds a first mortgage—less 10% hypothetical costs of sale ($1,440). Judi's vigorously disputes Rhodeback's appraisal figures, asserting that there are three possible figures which the Court could appropriately choose from in valuing the Property. The valuation alternatives suggested by Judi's are based upon the county auditor's tax appraisal of the Property, its sale price in April, 1986, or the value derived from Whipkey's appraisal. Judi's proposed valuation alternatives are set forth in the chart below:

A. Tax Appraisal.

| | |
|---|---|
| Appraised Value (county auditor) | $80,100.00 |
| Less 10% costs of sale | − (8,010.00) |
| Less first mortgage on the Residential Tract | −(32,829.34) |
| Value of Judi's secured claim | $39,260.66 |

B. Sale Price.

| | |
|---|---|
| Sale Price (4–16–86) | $75,000.00 |
| Less 10% costs of sale | − (7,500.00) |
| Less first mortgage on the Residential Tract | −(32,829.34) |
| Value of Judi's secured claim | $34,670.66 |

C. Whipkey Appraisal.

| | |
|---|---|
| Appraised Value (per Whipkey) | $66,000.00 |
| Less 10% costs of sale | − (6,600.00) |
| Less first mortgage on the Residential Tract | −(32,829.34) |
| Value of Judi's secured claim | $26,570.66 |

Against the factual backdrop described above, the Court will consider the various legal arguments aserted by the parties.

### III. *Legal Discussion*

#### A. *Introduction*

Judi's objects to confirmation of the Plan on the following grounds:

(1) The Plan does not comply with 11 U.S.C. § 1325(a)(5)(B)(ii) inasmuch as the value of the property to be distributed to Judi's on account of its allowed secured claim is less than the amount of the Claim;

(2) The Plan violates the proscription contained in 11 U.S.C. § 1322(b)(2) against modification of the rights of a holder of an allowed claim secured only by the debtor's principal residence;

(3) The Plan fails to cure the arrearage on Judi's claim within a reasonable time as required by 11 U.S.C. § 1322(b)(5); and

(4) The Plan has not been proposed in good faith as mandated by 11 U.S.C. § 1325(a)(3).

Each of the bases underlying the Objection shall be examined below.

#### B. *11 U.S.C. § 1325(a)(5)(B)(ii)*

Section 1325(a)(5) of the Bankruptcy Code provides three alternative means of treating a secured claimholder under a Chapter 13 plan. First, the secured claimholder may accept the treatment proposed by the plan. 11 U.S.C. § 1325(a)(5)(A). Second, the holder of the secured claim may retain its lien on collateral and receive

distributions of property under the plan on account of its claim having a value that is not less than the allowed amount of the claim. 11 U.S.C. § 1325(a)(5)(B). Third, the property securing the claim may be surrendered to the claimholder. 11 U.S.C. § 1325(a)(5)(C). Here, treatment of Judi's under the Plan, Debtors contend, satisfies the requirements of § 1325(a)(5)(B). Debtors' Plan provides Judi's with lien retention rights thereby satisfying 11 U.S.C. § 1325(a)(5)(B)(i). However, according to Judi's, because the stream of payments it will receive under the Plan together with interest thereon is less than the allowed amount of its Claim, the Plan is not in compliance with § 1325(a)(5)(B)(ii) of the Bankruptcy Code. In ascertaining whether a debtor's treatment of a secured claim pursuant to a Chapter 13 plan comports with § 1325(a)(5)(B)(ii), a bankruptcy court must first necessarily determine the present value of the secured claimholder's collateral. See, *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 430 (6th Cir.1982); *In re Cook,* 38 B.R. 870, 871–876 (Bankr.D.Utah 1984). Recognizing that a threshold determination of value is a necessary prerequisite to analysis of compliance with § 1325(a)(5)(B)(ii), Judi's has filed the Motion requesting valuation of its secured claim pursuant to 11 U.S.C. § 506(a).[1]

Mindful of the foregoing principles, the Court will examine the record before it and determine the value of Judi's secured claim. Obviously, the Court has no independent knowledge or opinion as to the value of the Property. However, Rule 702, Federal Rules of Evidence, provides for the admission of expert testimony if it will assist the Court in understanding the evidence or in determining a disputed fact:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue, a witness qualified by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Notes of the Advisory Committee on Proposed Rules further illuminate the basis for use of expert testimony:

An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge. The most common source of this knowledge is the expert witness....

■ At hearing, two witnesses, purportedly possessing knowledge, skill, experience, training and/or education in the appraisal of real property, provided their opinion testimony regarding the value of the Property. Having weighed the testimony of Rhodeback and Whipkey, and having reviewed their appraisals, the Court is faced with the unenviable task of assigning a value to the Property. At the outset, the Court rejects two of the three alternative valuations offered by Judi's—*i.e.,* the county auditor's tax appraisal and the April 16, 1986 sale price. No evidence was offered establishing the methodology employed by the county auditor in arriving at a value for the Property. Moreover, both the tax appraisal and the April, 1986, sale price suffer from a common deficiency: in each case the property values were arrived at on dates which are now so remote in time as to be of no assistance to the Court in its valuation calculus. Most Courts hold that the proper date to determine the amount of a secured claim for purposes of a Chapter 11 or Chapter 13 Plan is the effective date of the Plan, which, in this case, would be the date of confirmation. See, *In re Klein,* 10 B.R. 657 (Bankr.E.D.N.Y.1981); *In re Fulcher,* 15 B.R. 446 (Bankr.D.Kan.1981);

---

1. § 506(a) of the Bankruptcy Code provides as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

*Cook*, 38 B.R. at 872. Hence, neither the tax appraisal valuation nor the April, 1986, sale price provide reliable evidence of the Property's present fair market value. Accordingly, the Court will base its finding as to the Property's value solely upon the testimony and written appraisals of Rhodeback and Whipkey.

■ Based on the record before it, the Court finds that the Property should be valued at $66,000. In affixing this value to the Property, the Court relies heavily upon the opinion of Whipkey. Whipkey's appraisal training and experience are much more extensive than Rhodeback's. Rhodeback's primary occupation is that of an auctioneer as opposed to an appraiser. In contrast, Whipkey has worked exclusively as an appraiser for over twelve years. And, Whipkey's written appraisal is far more detailed and thorough than Rhodeback's terse, one-page letter appraisal. Hence, the Court adopts Whipkey's $66,000 appraisal figure in valuing the Property. Accordingly, the Court calculates the value of Judi's secured claim in the following manner:

| | |
|---|---|
| Combined Value of the Farm Property and the Residential Tract | $66,000.00 |
| Less 10% costs of sale | − 6,600.00 |
| Subtotal | $59,400.00 |
| Less first mortgage on the Residential Tract | −32,829.34 |
| Value of Judi's secured claim | $26,570.66 |

Hence, in order to gain confirmation of their Chapter 13 Plan, Debtors' must provide Judi's with a stream of payments on account of its secured claim totalling $26,-570.66 over the term of the Plan together with interest thereon at a rate of 10%.

## C. *11 U.S.C. § 1322(b)(2)*

■ An alternative ground for sustaining its Objection, Judi's argues, is the Plan's noncompliance with 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) states in relevant part as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may....

(2) modify the rights of holders of secured claims, *other than a claim se-*cured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. (Emphasis added).

The interplay between § 1322(b)(2) and § 506(a) of the Bankruptcy Code has produced two distinct lines of authority in the decisional law. Section 506(a) provides for bifurcation of an undersecured creditor's claim into a secured and an unsecured portion. Divergent decisions have been rendered on whether a § 506(a) claim bifurcation modifies a home mortgage holder's rights in contravention of § 1322(b)(2). Finding a conflict between § 506(a) and § 1322(b)(2), some courts have concluded that § 1322(b)(2)'s more specific modification prohibition overrules the general provisions of § 506(a). *See, e.g., In re Simpkins*, 16 B.R. 956 (Bankr.E.D.Tenn.1982); *In re Hynson*, 66 B.R. 246 (Bankr.D.N.J. 1986). According to the opposing, and in this Court's view, more well-reasoned, line of authority, a § 506(a) claim division does not effect an impermissible modification within the meaning of § 1322(b)(2). *See, e.g., In re Neal*, 10 B.R. 535 (Bankr.S.D. Ohio 1981); *In re Jablonski*, 70 B.R. 381 (Bankr.E.D.Pa.1987); *Caster v. U.S. of America (In re Caster)*, 77 B.R. 8 (Bankr. E.D.Pa.1987); *In re Simmons*, 78 B.R. 300 (Bankr.D.Kan.1987); *In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989) (per Sellers, J.). The Court concurs with the following observation by Judge Sellers in *Frost*:

[Section] 506(a) and § 1322(b)(2) must be interpreted in a complementary manner. A claim must be allowable as a secured claim pursuant to § 506(a) before it may be protected under § 1322(b)(2) as a "claim secured only by a security interest in real property that is the debtors' [sic] principal residence." Further, the only controlling opinion in this district does not change this result as its holding is limited to treatment of the claim of a fully secured mortgagee. *In re Bradshaw*, 56 B.R. 742 (S.D. Ohio 1985). The secured claim protected by § 1322(b)(2) is

determined only after application of the principles of § 506(a). If the meaning of "secured claims" in the first phrase of § 1322(b)(2) were different from the meaning of "claim secured" in the second portion of § 1322(b)(2), surely Congress would have indicated such a distinction by the insertion of necessary qualifiers. The Court believes the two phrases express identical legal concepts: a claim allowed as secured after application of the principles of § 506(a).

This interpretation of § 1322(b)(2) does not unacceptably undercut the Congressional policy of protecting long-term mortgage-backed obligations. The mortgagee certainly has within its control the ratio of collateral value to loan amount which it will approve when it agrees to extend a loan. Normally the lending institution selects the appraiser to establish the property's value. Absent intentional depreciation by a debtor or very abnormal economic times, most holders of first mortgages should be fully secured and, therefore, within the protection of § 1322(b)(2). If their obligations are not so protected, a Chapter 13 debtor may modify the creditor's claim to the extent of the undersecurity. The creditor's allowed secured claim, however, must be paid in full with the contract rate of interest unless the claimant agrees to a different treatment....

*Frost*, at 806–807 (Bankr.S.D.Ohio 1989) (citations omitted).

Having concluded that bifurcation pursuant to § 506(a) of a claim secured only by a security interest in a debtor's principal residence is not violative of § 1322(b)(2)'s pro-scription against modification, the Court rejects Judi's Objection on this ground. Debtors' Plan's treatment of Judi's Claim implicitly contemplates division of the Claim under § 506(a) and resort to the cram-down powers provided by 11 U.S.C. § 1325(a)(5)(B)(ii). As the analysis above indicates, such treatment does not run afoul of the modification restriction contained in § 1322(b)(2).[2]

### D. *11 U.S.C. § 1322(b)(5)*

The Plan's purported noncompliance with 11 U.S.C. § 1322(b)(5)[3] is cited by Judi's as an additional bar to confirmation. Because the Plan fails to cure the arrearage on Judi's claim as permitted by § 1322(b)(5), Judi's argues, it is non-confirmable. The Court need not dwell at length on this issue. Section 1322(b)(5) is permissive: it allows a debtor a reasonable time to cure any existing arrearage on a long-term debt—*i.e.*, a debt on which the last payment is due after the date on which the final payment under the plan is due. Such long-term debts are excepted from discharge pursuant to 11 U.S.C. § 1328(a)(1). Treatment of a secured claim arising from a long-term debt under § 1322(b)(5) is but one permissible option afforded a Chapter 13 debtor. Alternatively, if a debtor is able, he may shorten the contractual repayment period by satisfying a long-term debt under a Chapter 13 plan through adherence to the requirements of 11 U.S.C. § 1325(a)(5)(B). This is precisely what Debtors propose here—satisfaction of Judi's allowed secured claim during the term of the Plan in accordance with § 1325(a)(5)(B). Such treatment, if ultimately approved by the Court, will allow

---

**2.** The Court is somewhat puzzled by Judi's § 1322(b)(2) argument. On the one hand, Judi's suggests that its contractual rights may not be modified in any way. Yet, in calculating its secured claim, Judi's begins with the present fair market value of the property and then subtracts the first mortgage of FFMC therefrom. Judi's Memorandum at 4–5. It seems, therefore, that Judi's argument implicitly recognizes the appropriateness of valuing its claim pursuant to 11 U.S.C. § 506(a) before applying § 1322(b)(2)'s proscription against modification.

**3.** Section 1322(b)(5) of the Bankruptcy Code provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> ....
>
> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ....

for discharge of Judi's allowed secured claim. Since Debtors do not treat Judi's Claim as a long-term debt under § 1322(b)(5), cure of the arrearage on the debt is not an essential prerequisite to confirmation.

### E. *11 U.S.C. § 1325(a)(3)*

██ Judi's final argument in opposition to confirmation of the Plan is as follows: Debtors' filing of a Chapter 13 case following their failure to make any payments due under the contract with Judi's since April, 1986, establishes lack of good faith on Debtors' part. This argument is without support.

Section 1325(a)(3) of the Bankruptcy Code requires that a Chapter 13 plan be proposed in good faith and not by any means forbidden by law. The Sixth Circuit has recently analyzed the good faith standard of 11 U.S.C. § 1325(a)(3) in *Metro Employees Credit Union v. Okoreeh–Baah, (In re Okoreeh–Baah)*, 836 F.2d 1030 (6th Cir.1988). The court concluded that "a good faith determination under § 1325(a)(3) requires an inquiry into all facts and circumstances of a debtor's proposed plan." 836 F.2d at 1033. In espousing a good faith analysis which looks to the totality of the debtor's circumstances, the Sixth Circuit embraced the twelve-factor inquiry adopted by the bankruptcy court in *Matter of Kull*, 12 B.R. 654 (Bankr.S.D.Ga. 1981). *Okoreeh–Baah*, 836 F.2d at 1032 n. 3. The factors articulated by the *Kull* court include the following:

(a) the amount of income of the debtor and the debtor's spouse from all sources;

(b) the regular and recurring living expenses for the debtor and his dependents;

(c) the amount of the attorney's fees to be awarded in the case and paid by the debtor;

(d) the probable or expected duration of the Chapter 13 plan;

(e) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(f) the ability of the debtor to earn and the likelihood of future increase or diminution of earnings;

(g) special situations such as inordinate medical expense, or unusual care required for any member of the debtor's family;

(h) the frequency with which the debtor has sought relief under any section or title of the Bankruptcy Reform Act or its predecessor's statutes;

(i) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

(j) whether the amount or percentage of payment offered by the particular debtor would operate or be a mockery of honest, hard-working, well-intended debtors who pay a higher percentage of their claims consistent with the purpose and spirit of Chapter 13;

(k) the burden which the administration of the plan would place on the trustee; and

(*l*) the salutary rehabilitative provisions of the Bankruptcy Reform Act of 1978 which are to be construed liberally in favor of the debtor.

*Kull*, 12 B.R. at 659.

Application of the foregoing factors to the record before the Court fails to demonstrate Debtors' lack of good faith. Debtors filing of a Chapter 13 case in the wake of their failure to make any payments to Judi's under their contract is the only arguable indicia of lack of good faith. This alone does not establish dishonesty or questionable conduct on Debtors' part. Indeed, resort to the legal remedies available under Chapter 13 certainly does not support a finding of bad faith. *Cf., Matter of Lewiston Seaport Plumbing & Heating, Inc. v. Prine (Matter of Prine)*, 10 B.R. 87, 89 (Bankr.D.Idaho 1981) (holding that "it is ... [not] bad faith for a debtor to file a Chapter 13 plan for the sole purpose of extending his tax liability, or to file for the sole purpose of using the cram down provisions on a secured creditor.... [A]ll [of such options are] ... legal remedies granted by Congress which the Courts should not deny by judicial fiat." *See also, Nelson v. Easley (In re Easley)*, 72 B.R. 948,

951 (Bankr.M.D.Tenn.1987); *In re Ashton*, 85 B.R. 766, 770 (Bankr.S.D.Ohio 1988). Hence, on the record before it, there is simply no basis for denying confirmation of the Plan for failure to satisfy the good faith criterion of § 1325(a)(3).

Based upon the foregoing, the Court rules as follows:

(1) With respect to the Motion By Judi's, Inc. To Determine Value Of Its Secured Claim, the Court hereby finds that the value of Judi's secured claim is $26,-570.66;

(2) The Objection By Judi's, Inc. To Confirmation Of Plan is sustained in part and overruled in part. Judi's Objection is SUSTAINED to the extent it is based upon Debtors' Plan's failure to comply with 11 U.S.C. § 1325(a)(5)(B)(ii). To the extent the Objection is predicated on alleged noncompliance with 11 U.S.C. §§ 1322(b)(2), (b)(5) and 1325(a)(3) the Objection is OVERRULED;

(3) Debtors are hereby granted twenty (20) days from the date of the entry of this order to take such action as is necessary to place their Plan in a posture for confirmation. In the event debtors fail to place their plan in a confirmable posture within twenty-days, this case shall be dismissed.

IT IS SO ORDERED.