**In re Paul Richard NEAL and Ethel G. Neal, Debtor(s).**

**Bankruptcy No. 1–81–00395.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Feb. 1, 1982.

Randall L. Lambert, Ironton, Ohio, for debtors.

Timothy J. Hurley, Taft, Stettinius & Hollister, Cincinnati, Ohio, for First Nat. Bank.

Arthur C. Elliott, Cincinnati, Ohio, Trustee.

DECISION AND ORDER ON OBJECTIONS OF FIRST NATIONAL BANK OF IRONTON TO PLAN FILED NOVEMBER 25, 1981.

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 13 case, debtors have filed a complicated plan. It has a first portion to be applicable for the first 24 months, and a second portion to be applicable for the remainder of the plan. In the amended Chapter 13 plan filed November 25, 1981, which is the plan now before us, during the first portion payments to the trustee are stated to be $2,644.00 per month, increasing to $2,877.00 per month after the first 24 months. In both portions of the plan, there is separate provision for (a) priority credi-

tors, (b) secured creditors and (c) unsecured creditors.

Now before us are objections of First National Bank of Ironton ("Bank") which is a secured creditor. The indebtedness to Bank is said to be $94,194.46. Contract payments on the obligation are $957.00 per month. The collateral does not include residence real estate. For present purposes, the central question presented is that debtor proposes to reduce the monthly payment to Bank to $700.00 per month for the first 24 months of the plan, and thereafter resume the contract payment of $957.00. The plan does not during the first twenty-four months propose to make payment on account of the present arrearage of the obligation to the Bank. Only after the first 24 months, arrearage payments to Bank in the amount of $700.00 per month will commence, liquidating both the pre-plan arrearage, and also the additional arrearage which will have arisen during the first 24 months of the plan. More specifically, the plan says that the $700.00 monthly payment would be applied to liquidate the arrearage of approximately $20,000.00; "Payments until liquidated approximately 30 months." The arrearage thus would be liquidated within the five years permissable under 11 U.S.C. § 1322(c). The indebtedness itself, however, would not be liquidated within the term of the plan, but would continue until after completion of the plan.

We had occasion in an earlier decision in this case filed November 2, 1981 entitled Decision and Order Sustaining Objections to Confirmation of Debtors' Supplemental Plan, to address a prior version of the present plan. There we refused confirmation because the plan did not make any express provision dealing with arrearage, and failed to provide for retention of the lien. We said there that: "The plan must contain a provision for provision for compensatory payment for the deferred receipt by the Bank of the difference between the contract payments and the reduced payments, and the plan must be amended by debtor in some equitable manner in accordance with § 1325(a)(5)(B)(ii) before it will be confirmed." Debtors have approached

this requirement by filing an amended plan dealing with arrearage in the manner above detailed. Bank again says that such amended plan cannot be confirmed and objects to confirmation.

The objection to confirmation raised by Bank has for its central thesis that the law does not permit modification of its contract payments as is proposed because the plan proposed in its treatment of Bank does not comply with 11 U.S.C. § 1322(b)(5). In approaching the question presented by Bank, we immediately must note 11 U.S.C. § 1322(b)(2) which expressly provides that the rights of holders of secured claims may be modified, where the security interest is other than in real property that is debtors' principal residence. The real property here involved is not the residence of debtors. The question becomes, is there some reason why debtors ought not to be allowed to modify the rights of Bank secured by non-residence real estate, in the manner proposed in the plan.

For its first argument, Bank says that deacceleration of the mortgage loan can only be permitted where the plan provides for the payment of arrearages within a reasonable time and for the maintenance of the contractual payments on the loan, citing In re Taddeo 9 B.R. 299 (Bkrtcy.E.D.N.Y., 1981), aff'd. 15 B.R. 273 (D.C., E.D.N.Y., 1981); In re Rippe 14 B.R. 367 (Bkrtcy.S.D., Fla.1981); In re Davis 15 B.R. 22 (Bkrtcy. Ky.1981); 5 Collier on Bankruptcy (15th ed.) § 1322.01(E).

Bank's alternative argument is that because it is entitled to interest on the arrearage, it will not be possible, at the rate proposed, for the arrearage to be paid out within the life of the plan. Bank says that even if the arrearage were cured during the life of the plan, it would not satisfy the requirement of § 1322(b)(5) that the cure be made "within a reasonable time", citing In re Pollasky 7 B.R. 770 (Bkrtcy.Colo., 1980); In re Coleman 5 B.R. 812 (B.J., Ky. 1980); In re Acevedo 9 B.R. 852 (Bkrtcy.E. D.N.Y., 1981). It is clear that both of Bank's arguments assume that 11 U.S.C.

**714**

§ 1322(b)(5) must govern the present decision.

■ We have concluded that it is not necessary to reach the questions raised by Bank in its objection to confirmation. The statute here involved, 11 U.S.C. § 1322(b)(2), allows that a plan "modify the rights of holders of secured claims". Where the security of the holder is not an interest in the debtor's principal residence, that paragraph contains no limitation as to how the rights of a secured creditor may be modified. It is necessary to face the question whether this means that there are no limitations on the power of a debtor to modify the rights of a secured creditor. The answer to this in part appears to be that if the secured creditor agrees, his rights may be modified without limitation, and the court can still confirm the Chapter 13 plan. But what of the case where the secured creditor does not agree to the proposed modification of his rights. The parties have not directed our attention to any relevant authority dealing with § 1322(b)(2) where the collateral involved is not residence real estate, and we have not ourselves found any. This case thus appears to be one of first impression.

■ After careful consideration of the Code, we have concluded that the power of the debtor to modify the rights of a secured creditor holding collateral which is not residence real estate, is not unlimited. We come to this conclusion based upon the changes made in Chapter 13 by the Bankruptcy Code, by contrast to its predecessor in the Bankruptcy Act. A fundamental change was wrought, for under the Code a Chapter 13 plan may be confirmed without the affirmative vote or approval of creditors. In exchange for conferring upon the court the power to confirm without the consent of creditors, the Congress intended that there be limitations on how that power could be exercised. With respect to secured creditors these limitations are to be found basically but not entirely at 11 U.S.C.

§ 1325(a)(5). Apart from the techniques provided in the several subparts of § 1325(a)(5) the Code permits the curing of defaults pursuant either to 11 U.S.C. § 1322(b)(3) or (5).* By creating these ground rules, the Congress set up within the statute itself standards deemed fair to those creditors being deprived of the right to take normal enforcement action against a debtor.

Because there is not consent by the secured creditor in this case, debtors could resort to § 1325(a)(5)(C), and surrender the collateral of the secured creditor to the creditor. This is not being proposed by the debtors. Debtors could utilize the technique provided by § 1325(a)(5)(B)(ii), seek a valuation of the collateral and provide for a distribution to the secured creditor under the plan of the value. Debtors are not proposing this alternative.

The only other possibility available to debtors is to seek to modify the rights of Bank by providing for a curing or waiving of the default, or arrearage in its claim. This also is not what is being proposed by debtors, at least, that is not all that is being proposed by debtors. They provide in addition for a reduction in contract payments of the Bank. Nowhere does the Code in its Chapter 13 provisions allow for such action, and for this reason we conclude that the plan proposed cannot be confirmed. To the extent that this decision may be inconsistent with the earlier one in this case identified above, that earlier decision is superseded.

The objections of Bank are sustained. In view of the extended pendency of this case, it is hereby ORDERED that the case be dismissed.

* This statement should not be construed to be a determination that § 1322(b)(3) and (5) are equally applicable here. We lump them only because both deal with curing defaults. A determination of when each is applicable we leave to another day.