**In re Marion Ahrendt Brookbank DELANEY, Debtor.**

**Bankruptcy No. 1–89–02710.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 13, 1989.

Robert Goering, Cincinnati, Ohio, for debtor.

William R. Schumacher, Cincinnati, Ohio, trustee.

Sylvan Reisenfeld, Cincinnati, Ohio, for Fifth Third Bank.

## DECISION AND ORDER

BURTON PERLMAN, Chief Judge.

Debtor filed a Chapter 13 case. In her schedules, debtor listed the Fifth Third Bank ("Bank") as a secured creditor, there saying that the amount claimed by the creditor was $43,000.00, and the security therefore was 400 shares of Procter and Gamble ("P & G") stock. In the schedules, it is also stated that the consideration for this transaction was "contingent liability with Promethean Concepts, Inc."

The Bank reacted first to debtor's filing of a bankruptcy case by filing a motion to dismiss on grounds that the case was filed in bad faith. It subsequently filed a motion for relief from stay which at the present time is no longer pending.

The motion to dismiss was set for hearing, the agenda for the hearing extending also to confirmation of the plan. At the hearing, the evidence was largely stipulated, but the debtor offered testimony. In addition, her deposition was made of record.

We find the following to be the facts. Debtor's son, Mark Brookbank, started a business enterprise called Promethean Concepts, Inc. In connection with that enterprise, on June 14, 1988, debtor executed a document entitled "Consent to Pledge" whereby debtor pledged 400 P & G shares as "collateral security for the payment of any and all indebtedness, liabilities or obligations," which became due to the Bank from Promethean Concepts, Inc. Subsequently Promethean Concepts borrowed $45,000.00 from the Bank on March 9, 1989, and a further $55,000.00 on May 17, 1989. In addition to debtor's shares of stock, the Bank was secured by the assets of Promethean Concepts, Inc. On July 10, 1989, Promethean Concepts, Inc. filed a Chapter 11 bankruptcy case. On the same date,

debtor filed the present Chapter 13 bankruptcy case.

Prior to these filings, the Bank filed suit against Promethean Concepts, Inc. and secured a judgment against that party in the amount of $95,000.00 which they have been unable to collect. The Bank wishes to look to debtor's 400 shares of P & G stock in order to satisfy the debt of Promethean Concepts, Inc. In her Chapter 13 plan, however, debtor provides that:

The Fifth Third Bank will continue to hold the 400 shares of P & G stock owned by the debtor as collateral for the loan of Promethean Concepts, Inc. The stock will not be sold by the creditor unless there should not be a plan confirmed in the Chapter 11 of Promethean Concepts, Inc., or unless there should be a default on the plan of Promethean Concepts, Inc.

The present debtor says that her Chapter 13 plan was filed not merely to forestall the sale of the P & G stock, but it was filed because she is in a position where she cannot otherwise manage her debts given her present resources. If debtor's P & G stock held by the Bank were sold, this would have the extremely prejudicial effect of making her liable to a capital gains tax in excess of $8,000.00 for the year of sale.

Debtor is employed at Promethean Concepts, Inc., where she takes home $230.00 twice a month. In addition to the 400 shares of P & G stock pledged to the Bank, debtor has assets consisting of additional shares of stock plus certificates of deposit totaling approximately $77,500.00. In addition, she owns her home valued in her schedules at $35,000.00 upon which there is a $3,000.00 mortgage (and as to which she can claim an exemption of $5,000.00). Debtor receives income on account of her various holdings totaling $4,800.00 per year.

It is debtor's contention that the reason she filed the Chapter 13 case was because on her income she is unable to manage her unsecured debt totaling some $12,000.00, and certainly an additional expense for capital gains tax of $8,000.00 would be calamitous for her.

The Bank argues that clearly debtor filed her Chapter 13 case in bad faith because the total market value of her property, less exemptions, is $135,425.00, while her indebtedness, secured and unsecured, totals something less than $60,000.00. The Bank reasons that because debtor owned capital assets sufficient to pay all of her debts, the inference must be drawn that she filed the Chapter 13 case for the purpose of defeating the Bank's right to liquidate her 400 shares of P & G stock and apply the proceeds to the indebtedness of Promethean Concepts, Inc. Debtor disputes the Bank's contentions by saying that liquidating her capital assets would jeopardize her security in that she would not have resources with which to meet the perils which occur as one grows older. In addition, we accept her testimony that her resources were insufficient to pay her existing unsecured creditors on a current basis. Her marital situation is unsatisfactory, and does not provide her with a dependable and significant source of support.

Notwithstanding the hardship which may result to debtor, we hold that the Bank's motion is well taken, particularly in view of the specific plan provision regarding the Bank's collateral. The Bank advanced money to Promethean Concepts, Inc. on its promise to repay its debt, and secured itself by taking as collateral the assets of Promethean Concepts, Inc. Before it would advance money to that corporation, however, the Bank required further security. That was the collateral, the 400 shares of P & G stock, belonging to this debtor. This debtor now proposes to strip the Bank of the second assurance which it got as a pre-condition to advancing money to Promethean Concepts, Inc. What is here proposed is that the Bank be deprived of its right to look to its guarantor, and limited to recovery from its primary obligor. While debtor calls our attention to legislative history suggesting that it is an objective of Chapter 13 to help debtors preserve assets and cases suggesting that good faith is shown where a purpose helpful to the debtor is present, nowhere does debtor present authority supporting her effort to

deprive the Bank of its right to look to debtor's P & G stock.

The good faith required by 11 U.S.C. Section 1325(a)(3) does not require merely that a debtor not be motivated by a dishonest or malicious purpose. Good faith requires that a plan "conform with the provisions, purposes, and spirit of Chapter 13." 15 Collier on Bankruptcy, Section 1325.-04[2] p. 1325–12 (1989 ed.). This plan does not meet that test. In *In re Neal*, 21 B.R. 712, 714 (Bankr.S.D.Ohio 1982), we said:

> After careful consideration of the Code, we have concluded that the power of the debtor to modify the rights of a secured creditor holding collateral which is not residence real estate, is not unlimited. We come to this conclusion based upon the changes made in Chapter 13 by the Bankruptcy Code, by contrast to its predecessor in the Bankruptcy Act. A fundamental change was wrought, for under the Code a Chapter 13 plan may be confirmed without the affirmative vote or approval of creditors. In exchange for conferring upon the court the power to confirm without the consent of creditors, the Congress intended that there be limitations on how that power could be exercised. With respect to secured creditors these limitations are to be found basically but not entirely at 11 U.S.C. Section 1325(a)(5). Apart from the techniques provided in the several subparts of Section 1325(a)(5) the Code permits the curing of defaults pursuant either to 11 U.S.C. Section 1322(b)(3) or (5). By creating these ground rules, the Congress set up within the statute itself standards deemed fair to those creditors being deprived of the right to take normal enforcement action against a debtor.

Because there is not consent by the secured creditor in this case, debtors could resort to Section 1325(a)(5)(C), and surrender the collateral of the secured creditor to the creditor. This is not being proposed by the debtors. Debtors could utilize the technique provided by Section 1325(a)(5)(B)(ii), seek a valuation of the collateral and provide for a distribution to the secured creditor under the plan of the value. Debtors are not proposing this alternative.

\* \* \* \* \* \*

Debtor has in her schedules classified the Fifth Third Bank as a secured creditor, so that the foregoing language is directly relevant here. As was true in *Neal*, the present debtor invokes none of the alternatives prescribed in Section 1325(a)(5).

Because debtor's plan is outside the possibilities allowed a debtor in dealing with a secured creditor by Chapter 13, it does not conform to the provisions, purpose or spirit of Chapter 13 as contained in the Bankruptcy Code. We hold therefore that debtor's plan is not proposed in good faith and the Bank's motion must be granted. In reaching this conclusion, we reject the argument of debtor that the Bank is not prejudiced by preventing it from resorting to collateral for which it had bargained over the period which would be involved in confirming a Chapter 11 plan for Promethean Concepts, Inc. and seeing whether that entity could perform the plan. While P & G stock is excellent collateral, cyclic swings of the stock market are a matter of common knowledge and requiring that the Bank be exposed to the risk of such swings is clearly prejudicial. Further, while debtor has shown prejudice to herself if sale of the P & G stock takes place, an offsetting factor to that prejudice is that she, upon realization by the Bank of the proceeds of sale of its collateral, would be subrogated to the rights of the Bank against Promethean Concepts, Inc. There is an equitability to allowing her to bear the risk of the success or failure of that entity rather than the creditor.

Debtor shall have twenty (20) days from the date of entry of this Decision and Order to file an amended plan which is consistent with this Decision. If debtor fails to do so, the Bank may present a final order of dismissal.

So Ordered.