**In re James G. McCULLOUGH and Fostina G. McCullough, Debtors.**

**Bankruptcy No. 3–89–04734.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 21, 1990.

John D. Squires, Dayton, Ohio, for debtors.

James C. Ellis, Dayton, Ohio, for City-Wide Bldg. Finance Corp.

George W. Ledford, Englewood, Ohio, Chapter 13 Trustee.

### DECISION AND ORDER DENYING CONFIRMATION OF DEBTORS' PROPOSED CHAPTER 13 PLAN

WILLIAM A. CLARK, Bankruptcy Judge.

Before the court is an objection of City-Wide Building Finance Corporation ("City-Wide") to confirmation of the proposed chapter 13 plan of James G. McCullough and Fostina McCullough, debtors. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L)—confirmations of plans.

### FACTS

The following facts appear from the uncontradicted representations of counsel made at the confirmation hearing and in memoranda of law:

1) On January 8, 1987 the debtors executed a promissory note ("Note # 1") in favor of CityWide in the amount of $17,500 and granted a second mortgage to City-Wide on real estate located at 2413–15 East Fifth Street, Dayton, Ohio;

2) On January 27, 1988 the debtors entered into an Agreement for Rental Rehabilitation Program and a Loan Agreement in which CityWide agreed to loan funds to the debtors for purposes of renovating property located at 209 and 213 Linden Avenue, Dayton, Ohio. The debtors executed a promissory note ("Note # 2") in favor of CityWide in the amount of $13,500 and granted CityWide a second mortgage on the Linden Avenue properties;

3) The "Agreement for Rental Rehabilitation Program" contained a provision that the principal amount of Note # 2 would be annually reduced by 10% so long as Note # 2 did not become due and payable. By virtue of the loan documents, the principal amount and accrued interest on Note # 2 were to become due and payable if—

a) the debtors transferred any legal or equitable interest in the real estate, or

b) the debtors defaulted on their payments to the first mortgagee, First National Bank, or

c) the debtors defaulted on their payments to CityWide on *any other loan obligation.*

4) On July 29, 1988 the holder of the first mortgage on the Fifth Street property

filed a foreclosure action against the debtors in state court. At that time the debtors were in default of payment of Note # 1 with CityWide, and as part of the foreclosure proceedings, CityWide was granted a judgment in the amount of $15,602.03 plus interest. The Fifth Street property was sold at a sheriff's sale and the mortgage of CityWide was extinguished. No sale proceeds were received by CityWide. Subsequently, CityWide filed a certificate of judgment with respect to its judgment for $15,602.03 which presumably attached to the Linden Avenue properties;

5) On October 7, 1988, based on the debtors' default under Note # 1, CityWide filed a complaint in state court alleging that the default under Note # 1 constituted a default under Note # 2 and that CityWide was entitled to and was declaring the entire balance under Note # 2 due and payable. A default judgment was granted to City-Wide on December 21, 1988 in the amount of $14,516.57 plus interest;

6) On March 4, 1989 First National Bank, the first mortgagee for the Linden Avenue properties, filed a foreclosure action against the debtors on the basis of a default in paying the first mortgage payments. A judgment and decree of foreclosure were granted to the First National Bank and the Linden Avenue properties were scheduled to be sold at an auction on December 22, 1989;

7) The debtors filed a petition in bankruptcy under chapter 13 of the Bankruptcy Code on December 22, 1989 and no sale of the properties was held;

8) The original plan of the debtors proposed to make "no payment" to CityWide with respect to its second mortgage on the Linden Avenue properties and states that

"per original loan terms, balance will be forgiven if debtors retain title. Balance would be due upon forced sale";

9) The debtors' schedules list First National Bank as holding a first mortgage on the Linden Avenue properties in the amount of $54,840.86 (with arrearages of $10,177.60). The two properties on Linden Avenue have been appraised separately at $30,000 and $28,000;

10) The debtors' amended plan proposes to pay $300 per month to the chapter 13 trustee for a period of 36 months and to pay a dividend of 30% to allowed unsecured claims.

## CONCLUSIONS OF LAW

CityWide takes the position that, because of the existence of the cross-default provision in the Linden Avenue loan agreement, the debtors may reinstate the terms of the Linden Avenue note and mortgage under § 1322(b)(5) of the Bankruptcy Code only if they cure the arrearages arising from the Fifth Street loan and resume regular payments on that loan.[1] Debtors maintain that § 1322(b)(2) of the Bankruptcy Code[2] permits them to modify CityWide's mortgage on the Linden Avenue properties, and that one of the terms they are proposing to modify is the effectiveness of the cross-default clause. The issue, then, is whether the debtors are permitted to adjust the terms of the Linden Avenue loan agreement so as to render a nullity the cross-default clause with respect to the Fifth Street property and to retain the Linden Avenue properties without making any payments to CityWide on the Linden Avenue loan.[3]

■ Initially, the court notes that it is not clear from the provisions of the debt-

---

**1.** A chapter 13 plan *may* "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).

**2.** A chapter 13 plan *may* "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaf-

fected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2).

**3.** Neither the parties nor the court have located any relevant case law concerning the effectiveness of a cross-default clause under the facts of this case. The debtors do not dispute that, absent bankruptcy, the cross-default provision is valid under Ohio law, and, therefore, the court assumes that the cross-default clause is effective under Ohio law.

ors' proposed plan whether the debtors are proposing to "cure" the Linden Avenue mortgage or proposing to "modify" its terms. Although the terms "cure" and "modify" are not defined in the Bankruptcy Code, "it is clear that Congress intended 'cure' to mean something different from 'modify'; otherwise, in light of (b)(2), (b)(3) would be superfluous." *Matter of Clark*, 738 F.2d 869, 872 (7th Cir.1984).[4] Despite the debtors' position at the confirmation hearing that they are "modifying" City-Wide's rights, the provisions of the plan itself cut against such an interpretation. The debtors' plan proposes to make no payments on the Linden Avenue loan because "per original loan terms, balance will be forgiven if debtors retain title." This reference and reliance upon the operative effect of the original loan terms causes the court to conclude that the debtors' plan proposes a reinstatement of CityWide's Linden Avenue mortgage by curing its terms, rather than a modification of such terms. The following cases explain the concept of "cure" in a chapter 13 plan:

"A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code." *Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26 (2d Cir.1982).

Ordinarily, the means by which one cures a default is by paying all amounts due and owing; however, "cure" is the end, not the means, and what the term refers to is the restoration of the way things were before the default. Thus, the plain meaning of "cure," as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the *status quo ante. Matter of Clark, supra*, 738 F.2d at 872.

■ In the instant matter, the event which triggered the acceleration of the Linden Avenue loan was the default on the Fifth Street loan. Therefore, by not proposing to "take care of the triggering event" the debtors' plan fails to propose a valid cure of the Linden Avenue loan. Nevertheless, even if the debtors were proposing to pay the Fifth Street loan, this court, under the facts of this case, would not permit such a cure, because it would clearly violate a fundamental principle of bankruptcy: that unsecured claims are to share equally in the distribution of a debtor's bankruptcy estate.

An examination of the debtors' case file reveals that the Linden Avenue properties have a combined appraised value of $58,000 and a first mortgage value of approximately $55,840. This leaves very little equity to secure CityWide's loan for the Linden Avenue properties and none at all to secure the certificate of judgment filed by CityWide for its judgment with respect to the Fifth Street property. Therefore, to either require or to permit the debtors to pay City-Wide's Fifth Street judgment by virtue of a cross-default clause would have the effect of elevating CityWide's unsecured Fifth Street claim to a secured status at the expense of the other unsecured creditors. As a result, in the instant matter, a cure of the Linden Avenue loan is impermissible.

■ However, because the provisions of § 1322(b) of the Bankruptcy Code are permissive rather than mandatory, a "cure" of the Linden Avenue mortgage is not the only avenue available for the debtors to achieve confirmation. "Treatment of a secured claim arising from a long-term debt under § 1322(b)(5) is but one permissible option afforded a Chapter 13 debtor." *In re Hill*, 96 B.R. 809, 814 (Bankr. S.D. Ohio 1989). Where the security for a secured claim is not a debtor's principal residence, as is the case here, a debtor may modify the rights of the secured claim holder under § 1322(b)(2) of the Bankruptcy Code. The basic limitations on such a modification

---

**4.** A chapter 13 plan *may* "provide for the curing or waiving of any default." 11 U.S.C. § 1322(b)(3).

are contained in § 1325(a)(5). *In re Neal*, 21 B.R. 712, 714 (Bankr. S.D. Ohio 1982). That section provides that the court shall confirm a plan if—

> (5) with respect to each allowed secured claim provided for by the plan—
>
>> (A) the holder of such claim has accepted the plan;
>>
>> (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
>>
>>> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
>>
>> (C) the debtor surrenders the property securing such claim to such holder.

Because the debtors' plan, as currently proposed, does not satisfy any of the above requirements of modifying a secured claim, it may not be confirmed at this time.[5]

In reviewing the requirements for obtaining plan confirmation under § 1325, the court observes that there may be an additional reason for denying confirmation at this time. Under the "best interests of creditors" test as expressed in § 1325(a)(4) of the Bankruptcy Code, unsecured creditors in a chapter 13 plan must receive at least as much as they would receive in a chapter 7 liquidation case. The debtors propose a distribution of $51,000 received in a postpetition settlement of a lawsuit to various creditors and the balance to the trustee for distribution pursuant to the terms of the debtors' plan. Assuming that the cause of action existed at the time the debtors filed their chapter 13 petition and that its potential proceeds were unencumbered, it is the court's initial impression that, because the cause of action would be part of a chapter 7 bankruptcy estate, the entire $51,000 would be available for distribution to unsecured creditors in a chapter 7 liquidation case. It is not readily discernible from the debtors' proposed chapter 13 plan that the unsecured creditors are to be provided with this amount under the plan.

Therefore, at any subsequent confirmation hearing, the court will expect the debtors to either explain why the court's view regarding a hypothetical chapter 7 distribution of the settlement proceeds is mistaken or to demonstrate that the plan distributions will in fact satisfy the requirements of § 1325(a)(4).

For the foregoing reasons, it is hereby ORDERED that confirmation of the debtors' proposed chapter 13 plan is DENIED. It is further ORDERED that any additional proposed plan of the debtors be filed within 30 days of the entry of this order.

---

5. In the event that the debtors propose in a subsequent plan to pay the amount of City-Wide's claim secured by the Linden Avenue

properties over the plan period, it appears that a § 506 valuation proceeding may be necessary to establish the amount of the secured claim.