**In re John MARCH, Debtor.**

**Bankruptcy No. 87–00322F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 25, 1988.

---

272

Jay Barry Harris, Neal J. Blaher, Hunt & Fineman, P.C., Philadelphia, Pa., for objector, Savin Corp.

Geri H. Gallagher, Norristown, Pa., for debtor, John March.

Edward Sparkman, Philadelphia, Pa., trustee.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

This contested matter involves a creditor's objection to confirmation of the debtor's chapter 13 plan on the basis of 11 U.S.C. § 1325(a)(3). The creditor contends that the plan has not been proposed in the requisite good faith and that consequently confirmation must be denied.

For the reasons set forth below, the objection shall be overruled and the debtor's plan will be confirmed.[1]

## I.

The creditor whose objection to confirmation is before me, Savin Corporation ("Savin"), is an unsecured judgment creditor of the debtor, John March. On October 14, 1986, judgment was entered in favor of Savin and against March in the district court for this district in the amount of $49,993.72. Subsequently on January 21, 1987, March filed a petition under chapter 13 of the Bankruptcy Code. Savin filed a proof of claim in the amount of $50,243.63, purportedly representing the amount of the judgment plus interest accruing from the date the judgment was entered until the date of the filing of the proof of claim.[2]

The parties agree that despite the judgment, Savin is an unsecured creditor of the debtor. In fact, Savin is the only unsecured creditor listed by the debtor in his chapter 13 statement and schedules.[3]

At the time of the debtor's bankruptcy filing, he was apparently current on all of his secured debts and owed no unsecured creditors other than Savin. The debtor's chapter 13 plan calls for continued payments directly to secured creditors as they come due and payment of $197.53 per month to the chapter 13 trustee for 36 months. After deduction of the trustee's commission, the entire balance of the trustee payments is to be turned over to Savin. The parties agree that if the plan is confirmed and properly executed by the debtor, Savin stands to receive $6,400.00 constituting approximately 12.61% of its total claim. The debtor's schedule of current income and expenditures provides that the debtor's monthly income is $3,300.00 and monthly expenditures are $3,058.07. After payments to the trustee, there would be a $44.40 monthly surplus.[4]

Savin contends that the debtor's bankruptcy plan was not proposed in good faith because it was purportedly filed solely to avoid payment of the judgment entered

---

1. This opinion shall constitute the findings of fact and conclusions of law required by Bankr. Rules 7052 and 9014.

2. No party in interest including the debtor registered an objection to the proof of claim and consequently it is deemed allowed. 11 U.S.C. § 502(a).

3. All of the debtor's statements and schedules were properly introduced into evidence in this matter. *See In re Aughenbaugh,* 125 F.2d 887 (3rd Cir.1942).

4. Although the debtor's schedules include payments of $45.00 monthly for a time share condominium and $125.00 monthly for newspapers, periodicals and books, Savin has not objected to confirmation on the basis of 11 U.S.C. § 1325(b)(1)(B). Absent an objection, I need not pass on the disposable income test set forth in that subsection. *See Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1226 (8th Cir. 1987); *In re Fries,* 68 B.R. 676, 685 (Bankr.E.D. Pa.1986).

against the debtor in district court. In support of its assertion, Savin points to the facts that the bankruptcy was filed less than 100 days after the judgment was entered, that Savin is the only creditor affected by the filing and that Savin will receive less than 13% of its unsecured claim. Savin asks that I determine that these circumstances warrant denial of confirmation pursuant to 11 U.S.C. § 1325(a)(3).

## II.

11 U.S.C. § 1325(a)(3) requires that a chapter 13 plan be "proposed in good faith and not by any means forbidden by law." Because the Code does not contain a definition of "good faith", courts have long struggled with the appropriate parameters for the requisite inquiry into the debtor's motive and intentions in proposing a chapter 13 plan.

Prior to passage of the 1984 amendments, most courts of appeals which had examined the issue[5] held that an inquiry into good faith required an examination into the totality of the circumstances comprising an evaluation of numerous factors including:

(1) the amount of the proposed payments, and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th Cir.1983); *In re Kitchens*, 702 F.2d 885, 888–89 (11th Cir.1983); *In re Estus*, 695 F.2d 311 (8th Cir.1982). *See also, Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir.1986); *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982); *In re Rimgale*, 669 F.2d 426, 432–33 (7th Cir.1982); *In re Goeb*, 675 F.2d 1386 (9th Cir.1982). Some of these courts focused on or addressed the percentage of repayment to unsecured creditors proposed in the plan as a relevant factor. *See e.g., Estus* at 317; *Deans* at 972; *Rimgale* at 432; *Goeb* at 1390.[6] The only court of appeals to depart from the general trend to analyze a list of factors as relevant to the totality of the circumstances was the D.C. Circuit Court in *Barnes v. Whelan*, 689 F.2d 193 (D.C.Cir.1982). The court in that case defined good faith as "honesty of intention". *Barnes* at 200. This approach had been chosen by certain of the bankruptcy courts which had addressed the issue. *See e.g., Matter of Wiggles*, 7 B.R. 373 (Bankr.N.D.Ga.1980); *In re Cloutier*, 3 B.R. 584 (Bankr.D.Colo.1980).

In this circuit, the Court of Appeals has held that nominal repayments to unsecured creditors taken alone do not violate the good faith standard of 11 U.S.C. § 1325(a)(3). *In re Hines*, 723 F.2d 333 (3rd Cir.1983). The Court of Appeals did not, however, attempt to define those

---

**5.** Many of the numerous bankruptcy court decisions addressing 11 U.S.C. § 1325(a)(3) were admirably catalogued by the Court in the recent decision—*In re Easley*, 72 B.R. 948 (Bankr.M.D. Tenn.1987).

**6.** The imposition of a substantial repayment requirement was recently criticized by an author who significantly participated in the drafting of the code. *See* Klee, *Ignoring Congressional Intent: Eight Years of Judicial Legislation*, 62 Am. Bankr.L.J. 1, 15–19 (Winter, 1988) ("Klee").

factors appropriate to an inquiry into the debtor's good faith.

■ To a large extent, the continued validity of those cases which broadly defined good faith under § 1325(a)(3) to include an inquiry into a wide variety of factors was undermined upon passage of the 1984 amendments to the Bankruptcy Code. Those amendments included provisions such as 11 U.S.C. § 109(g) to specifically delineate when a debtor's repetitive filings would be precluded. The existence of section 109(g) provides congressional guidance on the circumstances under which repetitive filings are inappropriate and thus limits the need for the court to examine repetitive filings under the rubric of good faith.[7] *In re Samuel*, 77 B.R. 520 (Bankr.E.D.Pa. 1987). *See In re Keul*, 76 B.R. 79 (Bankr. E.D.Pa.1987).

More importantly here, the 1984 amendments added new code section 1325(b) which provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business. ·

By adding new section 1325(b), Congress clearly limited the factors which may be considered relevant under the good faith test of 1325(a)(3). *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir. 1987). The 8th Circuit in *Zellner* reevaluated its consideration of the good faith test it had propounded in *Estus* in 1982 and stated:

The Code has since been amended to include 11 U.S.C. § 1325(b). This section's "ability to pay" criteria subsumes most of the *Estus* factors and allows the court to confirm a plan in which the debtor uses all of his disposable income for three years to make payments to his creditors. Thus, our inquiry into whether the plan "constitutes an abuse of the provisions, purpose or spirit of Chapter 13," *Estus*, 695 F.2d at 316, has a more narrow focus. The bankruptcy court must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.

*Id* at 1227. *Accord, In re Gathright*, 67 B.R. 384 (Bankr.E.D.Pa.1986) *appeal dismissed*, 71 B.R. 343 (Bankr.E.D.Pa.1987); 5 *Collier on Bankruptcy*, ¶ 1325.04[3] at 1325–17 (5th Ed.1982) ("Collier"):

Since Congress has now dealt with the issue quite specifically in the ability-to-pay provisions, there is no longer any reason for the amount of a debtor's payments to be considered as even a part of the good faith standard. Moreover, by dealing specifically in other provisions with the new problems which were perceived to require a redefinition of good faith under the Code, including not only the amount of chapter 13 payments to unsecured creditors but also the issue of

---

**7.** I recognize, however, that in some circumstances, repetitive filings may constitute evidence of lack of good faith to the extent that they reflect the debtor's intent to misuse the relief available under the code. *See In re Kin-* *ney,* 51 B.R. 840 (Bankr.C.D.Cal.1984). *Accord In re Samuel,* 77 B.R. 520 (Bankr.E.D.Pa.1987). In the case at bench, however, there is no issue as to repetitive filing.

repetitive bankruptcies, Congress has made clear its intention that the term good faith should not be expanded beyond the meaning it traditionally has had. Only where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith.

(footnotes omitted).[8] *But see In re Nittler,* 67 B.R. 217 (D.Kan.1986).[9]

■ Thus, several of the factors traditionally addressed by courts making the good faith inquiry pursuant to section 1325(a)(3) are no longer relevant. I conclude that the scope of good faith inquiry must be limited to those factors which address (1) whether the debtor has deliberately misinformed the court of facts material to confirmation of the plan; (2) whether the debtor intends to effectuate the plan as proposed and (3) whether the proposed plan is for a purpose not permitted under the Bankruptcy Code. *See Zellner; Barnes.*

Additionally, I recognize that there is a requirement that a bankruptcy be filed in good faith which is separate and apart from the requirement that a chapter 13 plan be proposed in good faith. *Matter of Madison Hotel Associates,* 749 F.2d 410 (7th Cir.1984). *See also e.g., In re Kinney,* 51 B.R. 840 (Bankr.C.D.Cal.1985) (tenth bankruptcy in just over two years was filed solely to prevent foreclosure by virtue of the automatic stay and was not filed in good faith). In the case at bench, Savin's objections appear to be addressed, at least in part, at the debtor's good faith in filing rather than at good faith in proposing the plan.[10] Frequently, in the chapter 13 con-

text there will be an overlap between the two good-faith inquiries because the debtor's plan must be filed within a very short time after the case is commenced. Bankr. Rule 3015.

In *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987), I considered the good faith requirement for filing a chapter 11 implicit in the bankruptcy code and concluded:

In enacting chapter 11, Congress determined that an otherwise eligible debtor is entitled to an opportunity to reorganize; the Code's policy is one of open access to the bankruptcy process. *See In re Johns–Manville Corp.,* 36 B.R. [727] at 735–37 [Bankr.N.Y.1984]. At the same time, Congress built procedural and substantive protections for creditors into the bankruptcy process. *E.g.* 11 U.S.C. §§ 305, 362(d), 363(c), 1112(b), 1121(b), (c); 28 U.S.C. § 1334(c). In engrafting the good faith requirement into the Code, courts must be careful not to upset the delicate balance of interests fashioned by Congress under chapter 11. Moreover, to the extent that the concept of good faith exists independent of other Code provisions (such as adequate protection), courts must be vigilant to apply this concept in ways consistent with the legislative policy decisions embodied in these other statutory enactments. Thus, in evaluating a debtor's good faith, the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended. When a debtor is motivated by plausible,

8. *See also* the legislative history of S.658, H.R. Rep. No. 1195, 96th Cong.2d Sess. 24–26 (1980), *reprinted in* 5 *Collier* at 1325–14; 126 Cong.Rec. S. 31, 157 (daily ed. Dec. 1, 1980) (remarks of Sen. DeConcini):

Many courts have construed the good faith language, (section 1325(a)(3)) to [require the debtor's best effort to repay unsecured creditors], which was not intended by Congress in the enactment of that requirement. The good faith requirement of that section is meant to bar the confirmation of a chapter 13 plan where the debtor either does not intend to effectuate the plan as proposed or where the proposed plan is for a purpose not permitted under Title 11.

9. Although the decision of the 4th Circuit in *Neufeld* was issued in 1986, long after the 1984 amendments became effective, the court in that case applied 11 U.S.C. § 1325(a)(3) to a case filed in 1983. It is not clear whether the 1984 amendments were considered by the court in ascertaining the relevant standard.

10. Although Savin's pleading is framed as an objection to confirmation, in its request for relief Savin also seeks dismissal of the bankruptcy case. Consequently, I will treat Savin's pleading both as an objection to confirmation based on 11 U.S.C. § 1325(a)(3) and a motion to dismiss for the debtor's lack of good faith.

legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.

I find nothing in the code or legislative history of chapter 13 which would suggest that Congress intended less open access to the bankruptcy process for debtors under chapter 13 than under chapter 11. In fact the liberal discharge provision for chapter 13, 11 U.S.C. § 1328 and the legislative history [11] suggest a congressional intent to encourage debtors to use chapter 13. Consequently, as in *Clinton Centrifuge*, I will decline to use the rubric of good faith upon filing to read substantive eligibility provisions into the code. *See generally*, Klee, *supra*. In chapter 13, as in chapter 11, in evaluating the debtor's good faith on filing, "the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended." *Clinton Centrifuge*, 72 B.R. at 905.

## II.

Having defined the relevant scope of the necessary inquiries, I find it relatively easy to resolve Savin's objection in this case. Savin's arguments on good faith can be reduced to three essential and interrelated components. Savin suggests that the court should infer bad faith from (1) the proximity of the debtor's filing to the entry of judgment against him in district court; (2) the fact that the proposed plan affects Savin alone; and (3) the fact that Savin will receive less than 13% of its claim.[12] I will address these points separately in reverse sequence.

As discussed above, the 1984 amendments to the Bankruptcy Code make clear that the extent to which unsecured creditors are to be paid under a chapter 13 plan is beyond the scope of the good faith inquiry under section 1325(a)(3). *Zellner; In re Greer*, 60 B.R. 547 (Bankr.C.D.Cal. 1986); *In re Red*, 60 B.R. 113 (Bankr.E.D. Tenn.1986). *See*, Klee, *supra*, at 19. *See also*, *Hines*. If a reorganization plan meets the requirements of 11 U.S.C. § 1325(a) it may be confirmed regardless of the percentage to be received by unsecured creditors as long as the debtor utilizes all of his "disposable income" as defined in section 1325(b).[13] Thus I cannot accept Savin's argument that the percentage of its unsecured claim which the debtor proposes to pay should be considered as a factor militating against confirmation of his plan. Similarly, the amount of debtor's proposed payments to unsecured creditors has no place in a determination of whether the bankruptcy petition was filed in good faith.

I find equally inapplicable Savin's argument that the debtor is improperly proposing a plan which affects only its rights. Nothing in the Bankruptcy Code precludes filing or proposing reorganization in the face of a single unsecured debt. Neither the relevant inquiry for good faith in proposing a chapter 13 plan nor the inquiry for good faith on filing allow a court to use the concept of good faith to create additional substantive eligibility requirements for proceeding under chapter 13 other than those explicitly enacted by Congress.

Similarly, the proximity of the debtor's filing to the entry of judgment against him in district court is not a relevant consideration. Nothing in the bankruptcy code requires a debtor to wait a certain period of time after a judgment is entered prior to filing bankruptcy.[14] As in

---

11. *See Collier* at 1325–12 to 1325–13 *citing* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977).

12. There was no evidence presented and thus nothing which would lead me to conclude that the debtor misrepresented material facts to the court or that he does not intend to complete his proposed plan.

13. In the case at bench, no objection was raised and no evidence was presented pursuant to section 1325(b). *See* note 4, *supra*.

14. Unlike many debtors, March has chosen not to wait until shortly before execution to obtain relief in this court. In fact, early filing may save the creditor some costs associated with execution. Even if the debtor had waited, however, the delay would not necessarily be an

*Clinton,* I am not inclined to preclude a debtor from doing what the bankruptcy code otherwise permits him to do.

■ In sum, Savin's position appears to be founded in a belief that the existence and timing of its judgment should preclude the relief which the debtor seeks under chapter 13. The enactment of and legislative history to 11 U.S.C. § 522(f)(1) suggests, however, that Congress intended that an otherwise unsecured creditor not receive more by virtue of its judgment than it could otherwise obtain:

> The debtor may void any judicial lien on exempt property (by virtue of 522(f)(1)) ... [this] right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions.

H.R.Rep. 95–595, 95th Cong. 1st Sess. 126–27 (1977). *See also* 11 U.S.C. § 506. By avoiding some of the potential effects of a judgment Congress evinced an intent that it should not matter whether bankruptcy is filed before or after judgment is entered on an otherwise unsecured claim. The fact that bankruptcy followed in close proximity to a particular creditor's obtaining judgment against the debtor does not give that creditor special status cognizable under the bankruptcy code.

Thus Savin's objection will be overruled and an order of confirmation shall be entered.

indication of bad faith. *See In re Greene,* 57 B.R. 272, 275 (Bankr.S.D.N.Y.1986) ("the now common practice of filing a bankruptcy case on the eve of the foreclosure of the debtor's home should not be tested in the context of the debtors' good faith or bad faith").