In re Bill NORWOOD a/k/a William Norwood, Debtor.

Bankruptcy No. 94–12845 SR.

United States Bankruptcy Court, E.D. Pennsylvania.

March 3, 1995.

Gail J. Edwards, Philadelphia, PA.

Angus Love, Pennsylvania Institutional Law Project, Philadelphia, PA.

Frederick L. Reigle, Reading, PA.

### MEMORANDUM OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

#### Introduction

Presently before the Court is the objection of Creditor Sylvester Allen Porter ("Porter") to the confirmation of the amended Chapter 13 plan ("Amended Plan") proposed by debtor Bill Norwood a/k/a William

Norwood ("Debtor").[1] A hearing on the objection was held on January 27, 1995, after which the Court took the matter under advisement for disposition by memorandum decision.

## *Jurisdiction*

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), 157(b)(2)(A) and (L).

## *Background*

On April 6, 1994 Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") in the Bankruptcy Court for the Eastern District of Pennsylvania ("Court"). Debtor initially filed a proposed Chapter 13 plan on the same day. The first meeting of creditors pursuant to Code § 341 was held on July 1, 1994. The hearing on confirmation of the Debtor's proposed plan was originally scheduled for October 21, 1994.

Porter is an unsecured creditor of Debtor by virtue of a civil judgment he obtained in the District Court for the Middle District of Pennsylvania ("Judgment") (Exhibit P–1). The Judgment, in the amount of $60,000, was entered on July 7, 1993. The Judgment was awarded to Porter on the basis of a sexual assault committed against him by Debtor on August 31, 1987 at the Camp Hill state correctional facility. At the time of the sexual assault Debtor was a civilian employee at Camp Hill, engaged as a tailoring trades instructor. Porter was an inmate there in August 1987. After the incident on August 31, 1987, Debtor was suspended from his position pending investigation, and was subsequently dismissed, effective October 15, 1987, for Department of Corrections Code of Ethics violations, concerning, *inter alia*, improper contact and fraternization with inmates, and breaches of correctional facility policy concerning the control of security keys

by personnel. Exhibit P–6 (Appeals Board Decision at pp. 1–2, and Dismissal Letter of October 14, 1987).

Debtor did not defend against the District Court action. In the Memorandum and Order issued by the District Court on or about the same day that the Judgement was entered ("Memorandum and Order") (Exhibit P–3), the court noted that: "By letter dated February 3, 1993, Defendant's counsel advised the Court that Defendant would not defend or contest the action (doc. of record 77)." *Id.* at p. 2, n. 2. Having already entered judgment against Debtor on the issue of liability because Debtor did not contest the action, *id.* at p. 2, the District Court proceeded to the issue of damages in the Memorandum and Order. *Id.* Despite the fact that Debtor did not appear at the trial on the issue of damages, the District Court heard the testimony of Porter and incorporated the following findings into the Memorandum and Order:

> Plaintiff testified that during the course of the rape he felt 'inhuman—like an animal; was in pain; was humiliated and the episode was a period of craziness.' Since the episode, his personality has changed in that he is afraid of people and tries to stay away from people. He experiences nightmares and what he calls 'daymares'[.] He explains his daymares as flashbacks whenever he sees a correctional officer wearing a brown shirt. Plaintiff was committed to solitary confinement after reporting the episode.

Exhibit P–3, at p. 2 (In a footnote the District Court states that the Defendant, the Debtor herein, "wore an institutional shirt which was tan or brown.").

Based on the above findings, the District Court concluded that "Plaintiff is entitled to compensatory damages in the sum of $50,000 and punitive damages in the sum of $10,000, plus an award of counsel fees." *Id.* It does

---

1. Also before the Court is the motion of the Chapter 13 trustee ("Trustee") to dismiss the case on the basis that the proposed plan does not appear to be feasible. At the hearing, however, counsel for the Trustee represented to the Court that Debtor had filed an amended plan which substantially addressed Trustee's concerns and that while a further "technical correction" would

still be required in order to fully fund the plan, the Trustee "would in all likelihood, recommend confirmation [to] give the debtor an opportunity to perform under the plan ..." Transcript of Hearing of January 27, 1995 ("Transcript") at p. 3. In light of this, the Court shall consider Trustee's motion to dismiss the case as having been withdrawn.

not appear from the record presented before this Court that ·Debtor ever appealed or sought reconsideration of the District Court Judgment.

■ At the hearing before this Court on January 27, 1995, Debtor admitted the entry of the Judgment against him. Debtor asserts that he did not defend against the action because he was not working at that time and could not afford to do so. Transcript at pp. 7–8. At the hearing, Debtor also denied ever having raped or sexually assaulted Porter. However, Debtor has not challenged the competency of the District Court to have entered the Judgment against him, nor has he asserted any other possible basis for collaterally attacking the Judgment in this Court. Accordingly, this Court is bound by the determinations made by the District Court on the issues of liability and damages. *See In re Garafano,* 99 B.R. 624 (Bankr.E.D.Pa.1989).

On or about December 6, 1993, Porter filed a motion for writ of execution to enforce the judgment against Debtor. *See* Order of the District Court entered on February 16, 1994 (Exhibit P–4). The District Court later deemed this motion to have been withdrawn, after having previously suggested to Porter by letter that he file and serve interrogatories on Debtor to discover what assets the Debtor might have in order to satisfy the Judgment. *Id.* Having apparently served such interrogatories without response, Porter subsequently moved for, and obtained an Order from the District Court on June 27, 1994 (Exhibit P–5), directing the Debtor to respond to the interrogatories on or before July 27, 1994, or face sanctions or contempt of court. *Id.* Prior to entry of this Order, however, Debtor filed his petition under Chapter 13 on May 6, 1994. The date on which Porter initially filed the motion to compel answers to his interrogatories was not made a part of the record in this proceeding.

Debtor testified at the hearing that he is currently employed as a private security guard and that he earns approximately $665.00 per month in net take home pay. In amended Schedule I, however, filed on December 2, 1994, Debtor lists monthly gross income of $1116.00 less payroll deductions for taxes and social security in the amount of $284.00, leaving him with net monthly take home pay of $832.00. This discrepancy may be explained by a pay increase Debtor testified having recently received earning him another $1.75 per hour. Extending this out on a monthly basis, Debtor now earns about another $262.50 per month gross, based on the 37.5 hour work week he testified having. Debtor also testified that he has approximately another $200.00 per month available to him from both his mother and his sister to assist him in making the payments under his proposed plan. Debtor included the $200.00 contribution from family members as additional monthly income in both the original and in Amended Schedule I.

On October 28, 1994, Trustee filed a motion to dismiss the case on the basis that Debtor's plan did not appear to be feasible. At the hearing on confirmation, however, Counsel for the Trustee represented that Debtor filed an amended plan on January 20, 1995,[2] which substantially resolved the Trustee's objection.[3] Under the Amended Plan, Debtor now proposes paying $278.94 per month to the Trustee for a period of 54 months for payment in full of secured claims, totalling $11,370.87, and payment of priority unsecured claims in the amount of $3,236.63. Like the original plan, the Amended Plan calls for no payments to unsecured nonpriority creditors whose claims are listed in Debtor's Schedule F as $64,864.16.[4]

Porter filed his objection to the original plan on July 19, 1994. Porter's objection was heard at the January 27, 1994, hearing on confirmation. While acknowledging that the discharge afforded debtors under Chapter 13 is broader than that provided under Chapter 7 and generally allows for the discharge of obligations that would not otherwise be dischargeable in Chapter 7 pursuant to Code

---

**2.** A review of the docket in this case reveals that Debtor had previously filed an amended plan on December 2, 1994.

**3.** The Court therefore deems Trustee's motion as having been withdrawn. *See* note 1, *supra.*

**4.** Upon examination of Schedule F, however, it appears that the total amount listed is incorrect and the actual total of the debts listed is the sum of $64,699.71.

§ 523(a), Porter contends that the Amended Plan was proposed for the improper purpose of frustrating his ability to ever collect on the Judgment and was therefore not proposed in good faith as required by Code § 1325(a)(3). Accordingly, Porter contends that the proposed plan, as amended, must be denied confirmation. Debtor contends that he filed his Chapter 13 petition and proposed the Amended Plan for the purpose of saving his home from loss due to foreclosure and sheriff's sale.

### Discussion

Bankruptcy Code § 1325(a) requires the bankruptcy court to confirm a proposed Chapter 13 plan if the six criteria set forth in that subsection are satisfied. *See e.g. In re Pearson,* 90 B.R. 638, 644 (Bankr.D.N.J. 1988). Porter has objected to confirmation of Debtor's Amended Plan on the ground that the plan does not satisfy the "good faith" requirement contained in subsection (a)(3).[5] In relevant part, this provision states:

> (a) Except as provided in Subsection (b), the court shall confirm a plan if—
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law;

*Id.*

■ The debtor, as with each of the other confirmation criteria specified in Code § 1325(a), bears the burden of establishing that its plan is proposed in good faith. *See e.g. In re Stewart,* 172 B.R. 14 (W.D.Va. 1994); *In re Thomas,* 118 B.R. 421, 423 (Bankr.D.S.C.1990); *c.f. In re Hines,* 723 F.2d 333 (3rd Cir.1983) (objecting party has burden of proving facts negating debtor's good faith in proposing the plan where the report of the standing trustee states that the plan satisfies the requirements of Code § 1322 and § 1325 and trustee recommends confirmation). However, the term "good faith" is not defined by the Code, nor was it defined in the predecessor section of the former Bankruptcy Act of the United States ("Bankruptcy Act"). *See* 5 Collier on Bankruptcy, ¶ 1325.04 (15th ed. 1994).

As noted in *In re March,* 83 B.R. 270, 273 (Bankr.E.D.Pa.1988), the determination of what factors should be applied by a court in evaluating good faith has long been a source of dispute among the courts. Prior to the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") many of the Circuit Courts of Appeals had compiled lists of factors which were to be considered when conducting this evaluation.[6] *See e.g., In re Estus,* 695 F.2d 311 (8th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir. 1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.

---

**5.** Code § 1325(a) states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 13 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

**6.** The most notable of the pre BAFJA decisions is *In re Estus, supra,* 695 F.2d at 317, wherein the 8th Circuit noted the following factors:

(1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate med-

1982); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982). These courts, and others, generally agreed, however, that the term good faith as used in Code § 1325(a)(3) was to be accorded no broader meaning than that which the term previously had under the former Bankruptcy Act. *See In re Johnson,* 708 F.2d 865 (2d Cir.1983); *Barnes v. Whelan,* 689 F.2d 193 (D.C.Cir.1982). Broadly speaking, this inquiry related to "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [Chapter 13] in the proposal or plan...." *Deans v. O'Donnell, supra,* 692 F.2d at 972 (citations omitted).

■ Many of the factors previously considered to be relevant to the good faith determination were eliminated by passage of BAFJA. *Educational Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987); *In re March, supra,* 83 B.R. at 274. As a result of the 1984 amendments the inquiry into whether a Chapter 13 plan was proposed in good faith has taken on a more narrow focus, *Zellner, supra,* 827 F.2d at 1227, and now principally concentrates on the following factors: a) whether the debtor has stated his debts and expenses accurately; b) whether he has made any fraudulent misrepresentations to mislead the bankruptcy court; c) or whether he has unfairly manipulated the Bankruptcy Code. *Id.; In re Carsrud,* 161 B.R. 246, 251 (Bankr.D.S.D.1993); *In re March, supra,* 83 B.R. at 275; *In re Gathright,* 67 B.R. 384 (Bankr.E.D.Pa.1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987). The inquiry, however, still has at its heart the determination of whether under the circumstances of the entire case, there has been an abuse of the " 'provisions, purpose, or spirit of [Chapter 13]' " in the proposed plan. *See Matter of Smith,* 848 F.2d 813, 818 (7th Cir.1988) (quoting *In re Rimgale, supra,* 669 F.2d at 431; *Thomas, supra* 118 B.R. at 423. The determination is one which must be

made on a case by case basis. *Thomas, supra,* 118 B.R. at 423.

■ In conducting this analysis, however, the court must be cautious not to engage in "moralizing" egregious conduct committed by the debtor prepetition. *See generally In re Chura,* 33 B.R. 558, 560 (Bankr.D.Colo. 1983); *Cf. In re Gathright, supra,* 67 B.R. at 387–88 (while not agreeing with this court that the nature of how a particular debt arose is irrelevant for purposes of determining good faith under Code § 1325(a)(3), the *Gathright* court notes that a bankruptcy court must not get caught up "in the heat of outrage against a particular debtor" seeking a discharge in Chapter 13 of debts which would be nondischargeable in Chapter 7). It must be borne in mind that one of the primary purposes of the bankruptcy discharge is to provide the honest but unfortunate debtor with a fresh start unencumbered by a mountain of insurmountable debt. A court must therefore be careful to see to it not only that the legitimate purposes of bankruptcy are served, but also that these legitimate purposes are not abused by one who would employ the benefits of a discharge for an improper purpose, such as to hinder, delay, or frustrate a particular creditor. *See e.g. In re March, supra,* 83 B.R. at 275; *c.f. In re Julius Roehrs, Co.,* 115 F.2d 723, 724 (3rd Cir.1940) (stating that the test of good faith of a plan filed under Chapter X of the Bankruptcy Act was "whether it was reasonable to expect that [the plan could be effected]; that there was opportunity and need for reorganization and that the petition was filed with the honest intention of effecting it *and not for the purpose of hindering and delaying creditors.*" (emphasis added)). The foregoing principles in mind, the Court now considers the Amended Plan proposed by Debtor and the objection thereto interposed by Porter.

In the matter *sub judice,* while Porter contends that Debtor misstated his debts by failing to include certain tax obligations in his bankruptcy schedules,[7] the thrust of his ob-

---

ical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy [Code]; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee. *Id.*

7. Debtor testified that he amended his schedules and the Plan to include the tax liability once he became aware of his liability for back taxes. It does not appear that the original omission was intended to be deceptive since the inclusion of the tax liability does not materially affect the

jection is that the Amended Plan constitutes an attempt by Debtor to manipulate the Bankruptcy Code to his personal advantage for the purpose of frustrating his ability to ever collect the judgment. Thus, Porter's objection focusses primarily on the third factor cited above. To wit, whether Debtor has unfairly manipulated the Bankruptcy Code.

 Porter, whose claim is based on a civil judgment awarding damages against Debtor stemming from a sexual assault on Porter, is the Debtor's single largest creditor. Debtor's Amended Plan proposes no payments to Porter on account of that Judgment. Because the Chapter 13 discharge is broader than that provided in Chapter 7, Chapter 13 affords Debtor the opportunity to discharge this debt even though such debt would likely be nondischargeable in a Chapter 7 proceeding under Code § 523(a)(6). *See generally, In re Short,* 176 B.R. 886, 888–89 (Bankr.S.D.Ind.1995); *In re Chase,* 28 B.R. 814, 818–19 (Bankr.D.Md.1983) (*"Chase I"*). That the Debtor has resorted to a section of the Code that would afford him a discharge of a debt that would be nondischargeable in Chapter 7 does not in and of itself provide a sufficient basis from which to conclude that the plan was proposed in bad faith. *See Matter of Smith, supra,* 848 F.2d 813; *Nuefeld v. Freeman,* 794 F.2d 149, 152–53 (4th Cir.1986); *Thomas, supra,* 118 B.R. at 423. However, "Resort to the more liberal discharge provisions of Chapter 13 . . . may well signal an 'abuse of the provisions, purpose, or spirit' of the [Code], especially where a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and the debtor proposes only minimal repayment of these claims under the plan." *Nuefeld, supra,* 794 F.2d at 152–53; *see also Noreen v. Slattengren,* 974 F.2d 75, 77 (8th Cir.1992) (affirming denial of confirmation where debtor filed Chapter 13 case, in part, to prevent victim of sexual abuse from proceeding with civil law suit brought against him); *In re Carsrud,*

*supra,* 161 B.R. 246 (Chapter 13 plan denied confirmation on good faith grounds where, *inter alia,* plan proposed payment of only 2.4% of civil judgment entered against Debtor for sexual assault and rape of his natural sister); *In re Chase,* 43 B.R. 739 (D.Md.1984) (*"Chase II"*) (reversing order confirming plan proposing payment of approximately one third of consent judgment agreed to by debtor in exchange for creditor's agreement not to testify at sentencing hearing following debtor's conviction for sexual assault of minor child. Debtor entered into consent judgment without intention of honoring it, made no attempt to pay, and filed for Chapter 13 relief immediately after garnishment proceedings were commenced).

 When viewed as a whole, it is apparent that Debtor has proposed the Amended Plan primarily as a means of sidestepping any responsibility whatsoever for the civil judgment entered against him for sexually assaulting Porter. Debtor's plan proposes full payment to secured creditors and unsecured priority creditors, whose claims comprise only approximately 18% of Debtor's total debt, while proposing no payment whatsoever to Porter, his most substantial creditor, whose claim comprises approximately 76% of the total debt in this case. While Debtor testified that he did not defend against the civil suit because he could not afford to do so, the Court finds this explanation implausible since Debtor's poor finances should not have prevented him from appearing pro se and putting in a defense, or at least answering the complaint with some form of general denial.[8] On the contrary, as the District Court noted, it was Debtor's counsel that notified the court that Debtor would not "defend or contest the action. . . ." Exhibit P–3. Debtor's real reason for not defending the action would appear to be the belief that he had nothing to lose at that time by simply not defending the action and just letting a judgment be entered against him. On direct examination in response to the

treatment of any claims under the Amended Plan.

8. While it is not fully clear from the record before the Court, it appears that Porter may well have prosecuted the District Court action himself

appearing pro se. At the very least, however, it seems relatively certain that the action was commenced by Porter pro se since the Complaint, Exhibit P–2, was not signed by counsel, but rather by Porter himself.

question "what did [your attorney] Mr. Diti advise you with respect to defending [the] action", Transcript, at p. 16, Debtor testified:

[A]t that time, I was renting and he asked me did I own anything? I told him, no, which I did not.... [A]t that time I was just renting an apartment and I didn't own anything, don't have a car.... And I felt at that time ... that if [Porter] wanted to file a ... claim against me ... and because I could not afford to hire an attorney to fight [it], that I told him that I could not fight it; I wouldn't because I don't own anything and if he wanted to sue me, he could sue me.

*Id.*

Debtor further testified that he was advised by his counsel to "just let the case go." *Id.* In response to whether he had been advised to file a bankruptcy rather than defend the action, Debtor admitted that his attorney had so advised him, but added that since he did not own anything at the time there was no sense to filing a bankruptcy. *Id.* While this may have been the case at the time of the civil proceeding, Debtor testified on cross-examination that in or about 1992 he acquired his current residence, the real property listed in Schedule A [9] which is located at 1318 North Hunting Park Avenue in Philadelphia. Debtor testified that while he had lived at this address for fourteen years, by renting it, he commenced purchasing the property in or about 1992, and entered into a mortgage to purchase same.

■ Debtor testified that the only reason he filed his Chapter 13 petition when he did was to prevent the loss of his residence at a sheriff's sale. Even assuming this to be the case [10] and assuming that debtor had a valid reason for initially filing the petition, these factors can not save a plan which has been proposed for an improper purpose. *Cf. In re Chura, supra,* 33 B.R. 558, 559–60 (although finding that the debtor had experienced financial difficulties, the court concluded that

the debtor's overall purpose was not to effect rehabilitation, but rather to evade responsibility for a nondischargeable judgment by absolving it through bankruptcy rather than the appellate process). Rather, it appears to the Court that the Chapter 13 plan has been proposed for the purpose of preventing Porter from ever recovering on the Judgment from any property now owned or subsequently acquired by Debtor. From Debtor's testimony it is apparent that he did not bother to defend against the District Court action because at the time he did not own anything of value which Porter could seize if judgment were entered against him. Debtor also apparently never considered himself obligated to Porter for the Judgment amount as Porter had been attempting, without success, to collect on the Judgment at least since December of 1993, when he filed a motion for a writ of execution. *See* Exhibit P-4. Subsequently, Porter served interrogatories on Debtor in an attempt to discover what property Debtor might have to satisfy the Judgment. However, after the interrogatories went unanswered, Porter was again required to seek the assistance of the District Court and obtained an Order compelling Debtor to respond. Exhibit P-5. But by the time that this Order was entered it was too late for Porter because Debtor had already filed his Chapter 13 petition.

Aside from the $60,000 claim of Porter, the only other unsecured nonpriority claims of Debtor are for debts owed to several utilities totaling $4,699.71. Having failed to defend the District Court action believing that he was judgment proof, it is evident that the Debtor chose Chapter 13 as a means of absolving himself of liability from an otherwise nondischargeable debt without the need of making any payment thereon while still retaining the benefit for himself of the property he acquired after entry of the Judgment. On balance, it appears that the effort here is not toward financial rehabilitation, but rather it is an effort to evade responsibil-

---

9. In Debtor's amended summary of schedules, filed on December 2, 1994, Debtor failed to include his ownership of any real property. The residence was previously listed in schedule A and was included on Debtor's original summary of schedules filed with the petition.

10. Debtor introduced no evidence to substantiate that a foreclosure had occurred or that a sheriff's sale was imminent at the time that the petition was filed.

ity from ever having to pay the Judgment. The Court also notes that in filing amended bankruptcy schedules on December 2, 1994, Debtor omitted both his residence and personal property from the assets column in the Summary of Schedules. Whether this was by design or was merely a careless error, as it stands now, however, the Amended Summary of Schedules now misstates Debtor's financial picture.[11]

Based on the foregoing the Court concludes that Debtor proposed the instant Chapter 13 plan for the purpose of avoiding any liability to Porter based on the Judgment, and has therefore not proposed the Amended Plan in good faith as required by Code § 1325(a)(3). Accordingly, confirmation of the Amended Plan must be denied.

Additionally, based on the Court's independent duty to determine if a proposed plan complies with the provisions of Code § 1325, see In re Szostek, 886 F.2d 1405 (3rd Cir.1989); In re Fricker, 116 B.R. 431 (Bankr.E.D.Pa.1990), the Court finds that the Amended Plan can not be confirmed because it also fails to satisfy the feasibility requirement of Code § 1325(a)(6). In the Amended Plan, Debtor proposes that his living expenses and or plan payments will be funded in part by gratuitous contributions from both his mother and his sister in the amount of $200.00 per month. Without these contributions Debtor does not have sufficient disposable income to both fund the plan and to pay his living expenses.

While it is possible that contributions from close family members can be included by a debtor as income available for distribution under a Chapter 13 plan, see In re Rowe, 110 B.R. 712, 717–18 (Bankr. E.D.Pa.1990), it is incumbent on the debtor to satisfactorily establish that the contributions are sufficiently "stable and regular to enable [the debtor] to make payments under a plan under Chapter 13. . . ." Code § 101(30); see also, In re Sigfrid, 161 B.R. 220, 221–22 (Bankr.D.Minn.1993); Code § 109(e).

The record before the Court is devoid of any relevant information which the Court would need in order to determine if the payments from his mother and sister are sufficiently stable and regular so as to allow the Debtor to rely on them in funding the Amended Plan. In the first instance, Debtor's own description of the availability of the payments to him, essentially that they are to be provided on an as needed basis, is telling in and of itself. Contributions that are only available to Debtor when they are needed are by their very nature not stable and regular. Moreover, while Debtor testified that his mother's income is derived from payments she receives from Social Security, he did not disclose the amount of these payments on a monthly basis. Similarly, Debtor did not disclose the source and amount of his sister's income. Also, Debtor did not provide any information concerning the expenses and liabilities that both his mother and sister are already burdened with. In the absence of such information it is not possible to determine whether the contributions Debtor expects to receive from these family members may be considered sufficiently stable and regular for purposes of funding the Amended Plan. See In re Sigfrid, supra, 161 B.R. at 222–23. Debtor also failed to provide any proof, such as by sworn affidavits or testimony from his mother and sister, demonstrating that they have the requisite commitment and ability to provide the funding to him on a consistent basis for the duration of the Amended Plan. C.f. In re Campbell, 38 B.R. 193 (Bankr.E.D.N.Y.1984) (confirming Chapter 13 plan funded in part by contributions from the debtor's sister, who was liable with the debtor, and daughter, who was dependent on the debtor and resided with her, conditioned on submittal of affidavits demonstrating their commitment and ability to make such contributions). Accordingly, Debtor has failed to establish that he has sufficient income with which to fund all of the payments called for under the Amended Plan, and also that the Amended Plan is feasible. Thus, the Amended Plan fails to meet the requirements of Code § 1325(a)(6).

Based on the foregoing, the Amended Plan can not be confirmed under Code

---

11. *See also* note 4, *supra.*

§ 1325(a)(1) because it was not proposed in good faith, and therefore does not satisfy the requirements of Code § 1325(a)(3), and also because Debtor failed to sufficiently prove that the Amended Plan is feasible pursuant to Code § 1325(a)(6). Debtor shall be provided the opportunity to address these deficiencies, and therefore may file an amended plan within twenty days after entry of this Memorandum Opinion. If an amended plan is not filed at the end of twenty days, the case will be dismissed.

An order consistent with the terms of this Memorandum opinion shall be entered.

### ORDER

**AND NOW,** this 3rd day of March 1995, upon consideration of the objection of Creditor Sylvester Allen Porter to the confirmation of the Amended Chapter 13 Plan proposed by Debtor, and after a hearing and consideration of the evidence presented, it is hereby

**ORDERED** that the findings of fact and conclusions of law contained in the Court's Memorandum Opinion issued of even date with this Order are incorporated herein; and it is further

**ORDERED** that the Amended Chapter 13 Plan proposed by Debtor is denied confirmation for the reasons stated in the Memorandum Opinion; and it is further

**ORDERED** that debtor shall have 20 days from entry of this Order to file an amended plan, or if an amended plan is not filed at the end of such period then the case will be dismissed.

**IT IS SO ORDERED.**